**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— :
:
**G.B. and L.B.. on behalf of their minor child,**   :
**NB, and on their own behalves,**   :
:
**Plaintiffs,**   :          **Civil Action 09 -CV- 859 (KMK)**
:
**vs.**   :
:
**TUXEDO UNION FREE SCHOOL DISTRICT,** :
:
**Defendant.**   :
—————————————————————————— :


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S**
**CROSS-MOTION FOR SUMMARY JUDGMENT**


Respectfully submitted:
**SHAW, PERELSON, MAY & LAMBERT, LLP**
Attorneys for Defendant
(Mark C.  Rushfield, Esq., of Counsel)
21 Van Wagner Road
Poughkeepsie, New York 12603
Tel.  No.  (845) 486-4200

On the Brief:
Mark C.  Rushfield, Esq.

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

PRELIMINARY STATEMENT AND PROCEDURAL HISTORY  . . . . . . . . . . . . . . . . .  1

THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

ARGUMENT

      POINT I

           THE PLAINTIFFS SHOULD BE DENIED
           LEAVE TO SUPPLEMENT THE
           ADMINISTRATIVE RECORD . . . . . . . . . . . . . 3

      POINT II

           THE PLAINTIFFS MAY NOT RAISE ISSUES
           THAT WERE NOT RAISED IN THEIR DUE
           PROCESS COMPLAINTS OR IN THE
           ADMINISTRATIVE PROCEEDINGS BELOW . . . . . . . . . . . . . . . . . 7

      POINT III

           THE SRO'S DECISION, AFFIRMING THAT OF
           THE IHO, THAT THE DISTRICT PROVIDED
           N.B. WITH A FREE APPROPRIATE PUBLIC
           EDUCATION IN THE LEAST RESTRICTIVE
           ENVIRONMENT, SHOULD BE AFFIRMED BY
           THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

         Keller School as Least Restrictive Environment  . . . . . . . . . . . . . . . . . . . . . . . 9

         North Garnerville As Least Restrictive Environment . . . . . . . . . . . . . . . . . . 11

         The Dispute As To Methodology  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      POINT IV

           THE PLAINTIFFS FAILED TO SATISFY
           THEIR BURDEN OF ESTABLISHING THAT

i

**THEIR UNILATERAL PLACEMENTS WERE APPROPRIATE FOR N.B FOR EITHER THE 2006-2007 OR 2007-2008 SCHOOL YEARS AS DETERMINED BY THE IHO** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**POINT V**

**THE PLAINTIFFS ARE BARRED FROM RECOVERING TUITION REIMBURSEMENTS FOR THEIR UNILATERAL PLACEMENTS OF N.B. BECAUSE THEY FAILED TO PROVIDE STATUTORY ADVANCE NOTICE OF THOSE PLACEMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**POINT VI**

**THE BALANCING OF THE EQUITIES WARRANTS DENIAL OF TUITION REIMBURSEMENT TO THE PLAINTIFFS FOR THE 2007-2008 SCHOOL YEAR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*A.S. v. Trumbull Bd. of Educ.*,
    414 F. Supp. 2d 152 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Arlington Cent. Sch. Dist. v. D.K.*, 02 Civ. 2117 (DLC),
    2002 U.S. Dist. LEXIS 21849 (S.D.N.Y. Nov. 14, 2002) . . . . . . . . . . . . . . . . . . . . . . . 21

*Bd. of Educ. of Montgomery County v. Brett*,
    155 F.3d 557, 1998 U.S. App. LEXIS 13702 (4th Cir. June 26, 1998) . . . . . . . . . . . . 17

*Berger v. Medina City Sch. Dist.*,
    348 F.3d 513 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Board of Education of the Hendrick Hudson Central School District v. Rowley*,
    458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Burlington v. Department of Educ.*,
    736 F.2d 773 (1st Cir. 1984),
    aff'd 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) . . . . . . . . . . . . . . . . . . . . . 4

*Cerra v. Pawling Cent. Sch. Dist.*,
    427 F.3d 186 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*E.G. v. City Sch. Dist. of New Rochelle*,
    606 F. Supp. 2d 384 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Frank G. v. Bd. of Educ.*,
    459 F.3d 356 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gagliardo v. Arlington Cen. Sch. Dist.*,
    489 F.3d 105 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Green v. N.Y. City Dep't of Educ.*, 07 Civ 1257 (PKC),
    2008 U.S. Dist. LEXIS 32118 (S.D.N.Y. Mar. 31, 2008) . . . . . . . . . . . . . . . . . . . 18, 19

*Greenland Sch. Dist. v. Amy N.*,
    358 F.3d 150 (1st Cir. N.H. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Grim v. Rhinebeck Cent. Sch. Dist.*,
    346 F.3d 377 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

iii

*Handleman v. Bd. of Educ.*,
  2007 U.S. Dist. LEXIS 77814 (W.D.N.Y. Oct. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Heather S. v. State of Wisconsin*,
  125 F.3d 1045 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*J.A. v. E. Ramapo Cent. Sch. Dist.*,
  603 F. Supp. 2d 684 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Jennifer D. v. N.Y. City Dep't of Educ.*,
  550 F. Supp. 2d 420 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*K.C. v. Bd. of Educ.*,
  2007 U.S. Dist. LEXIS 37439 (D. Md. May 22, 2007) . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*L. v. N. Haven Bd. of Educ.*,
  624 F. Supp. 2d 163 (D.Conn. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ms. M. v. Portland Sch. Comm.*,
  360 F. 3d 267 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Ms. K. v. City of S. Porland*, 04-275-P-S (DMC),
  2006 U.S. Dist. LEXIS 7292 (D. Me. Feb. 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*New Milford Bd. of Ed. v. Sergi*,
  74 Fed. Appx. 148 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ojai Unified Sch. Dist. v. Jackson*,
  4 F.3d 1467 (9th Cir. 1993),
  cert. denied 513 U.S. 825, 115 S. Ct. 90, 130 L.Ed.2d 41 (1994) . . . . . . . . . . . . . . . . 4

*P. v. Newington Bd. of Educ.*,
  546 F.3d 111 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*P.S. v. Brookfield Bd. of Educ.*,
  364 F. Supp. 2d 237 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Patricia P. v. Board of Ed. v. Oak Park & River Forest High School Dist. No. 200*,
  203 F.3d 462 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Plainville Bd. of Educ. v. R.N.*, 09 CV 241 (RNC),
  2009 U.S. Dist. LEXIS 61693 (D. Conn. July 10, 2009) . . . . . . . . . . . . . . . . . . . . . 4, 6

*Polera v. Board of Education*,
  288 F.3d 478 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*R.C. ex rel. N.C. v. Bd. of Educ.*, 07-CV-2806 (KMK),
    2008 U.S. Dist. LEXIS 52084 (S.D.N.Y. June 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rafferty v. Cranston Pub. Sch. Comm.*,
    315 F. 3d 21 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Roland M. v. Concord Sch. Comm.*,
    910 F.2d 983 (1st Cir. 1990),
    cert. denied, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991) . . . . . . . . . . . . . . 4

*Springer by Springer v. Fairfax County Schoolboard*,
    134 F.3d 659 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thies v. N.Y. City Bd. of Educ.*, 07 Civ 2000 (RMB),
    2008 U.S. Dist. LEXIS 11354 (S.D.N.Y. Feb. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Viola v. Arlington Cent. Sch. Dist.*,
    414 F. Supp. 2d 366 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*W.H. v. Clovis Unified Sch. Dist.*,
    2008 U.S. Dist. LEXIS 99097 (E.D. Cal. Nov. 25, 2008) . . . . . . . . . . . . . . . . . . . . . 4, 6

*Walker County School District v. Bennett*,
    203 F.3d 1293 (11th Cir. 2000),
    cert. denied 531 U.S. 1059, 121 S.Ct. 670, 148 L.Ed.2d 572 (2000) . . . . . . . . . . . . . . 4

*Watson v. Kingston City Sch. Dist.*,
    325 F. Supp. 2d 141 (N.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATUTES

20 U.S.C. §1412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

20 U.S.C. §1415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

Plaintiffs, on behalf of their minor child, N.B., in their Amended Complaint in this action as against the defendant Tuxedo Union Free School District ("District"), set forth a claim for relief under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2). Plaintiffs assert therein that the decision of the New York State Review Officer ("SRO") in Decision No. 08-087 (the "SRO Decision") must be reversed.

In that decision, the SRO affirmed the decision of the Impartial Hearing Officer ("IHO") that the District had provided N.B. with a free appropriate public education in the least restrictive environment ("FAPE") for the 2006-2007 and 2007-2008 school years and denied the plaintiffs request for tuition reimbursement for their unilateral placement of N.B. at successively, the Montclair State University Preschool during the 2006-2007 school year, and at a school operated by the Montclair State University Childrens Center for the 2007-2008 school year until November of 2007, followed by the Montessori School as of December 1, 2007.

The IHO had further held that the plaintiff parents had not met their burden of establishing that their unilateral placement of N.B. at any of the aforesaid schools was appropriate to meet N.B.'s special education needs and determined that in light of his decision he needn't address the balancing of the equities. The SRO determined that in light of his decision that the District had provided N.B. with a FAPE for the 2006-2007 and 2007-2008 school years, he need not address the IHO's decision that the parents had not met their burden of establishing that their unilateral placement of N.B. at any of the aforesaid schools was appropriate to meet N.B.'s special education needs or the balancing of the equities.

This matter is now before the Court on cross-motions for summary judgment.[1]

Before addressing the merits of the SRO Decision, the Court will need to address two preliminary issues: (1) whether the plaintiffs should be permitted to supplement the record below with documentary evidence that was available to them during the impartial hearings and that they were foreclosed from submitting to the SRO because of their non-compliance with the regulations governing the appeal process before the SRO; (2) whether the plaintiffs will be allowed to make arguments that were not raised in their due process complaints or in the proceedings below.

Further, should the Court determine that the SRO erred in holding that the District had provided N.B. with a program providing her with a FAPE for the two school years involved, the Court would then need address two other issues: (1) whether the determination by the IHO that the plaintiffs failed to meet their burden of establishing the appropriateness of the Montclair State University and Montessori programs to address N.B.'s special education needs should be affirmed and (2) the balancing of the equities issue that neither the IHO nor the SRO felt the need to address.

### THE FACTS

In the interest of brevity, the Court is respectfully directed to the administrative record and SRO Decision No. 08-087, the IHO's June 27, 2008  Decision, as well as the District's Rule 56.1 Counter-Statement (which is based exclusively upon that record and those decisions) submitted

---

[1]Though this Court's function under 20 U.S.C. § 1415(i)(2) differs from the typical summary judgment review, a motion for summary judgment is an appropriate, and probably the most pragmatic, procedural vehicle for asking the Court to decide an IDEA cause of action on the basis of the administrative record.  *See Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997), *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003),  *Mr. X. v. New York State Educ. Department*, 975 F. Supp. 546, 554-55 (S.D.N.Y. 1997) and *Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996). As this Court has noted on numerous occasions, "[a]n IDEA action, however, differs from an ordinary summary judgment motion because the existence of a disputed issue of material fact will not defeat the motion." *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, at 377 (S.D.N.Y. 2006) (*citing Antonaccio,* 281 F. Supp. 2d at 714).

herewith, for a statement of the facts relevant to the instant motion.

The District notes that independent of their Rule 56.1 Statement, the plaintiff parents make numerous factual representations and references to the record of the administrative proceedings in the Argument portion of their Memorandum of Law to allegedly support those references that are not made part of the "facts" presented in their Rule 56.1 Statement. A review of the factual representations in the Plaintiff's Memorandum of Law establish that many are conclusory and/or are not supported by the record references relied upon therein.

The Court is requested to focus upon the parties cross-Rule 56.1 Statements, to the extent they are supported by the administrative record, for a determination of the relevant facts.

## ARGUMENT

### POINT I

### THE PLAINTIFFS SHOULD BE DENIED LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Under the IDEA, at 20 U.S.C. § 1415(i)(2)(C), a court deciding an action brought under the IDEA "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

In the light of the interest in preserving the significance of the administrative hearing process dictated by the IDEA and in avoiding an unrestricted trial *de novo* on the issues relegated to that statutory administrative process (such as the appropriateness of a parent's unilateral placement), most of the federal courts that have considered the issue of the right of a party to submit such additional evidence under this section have narrowly construed it to preclude admission of such

3

evidence for purposes of challenging the final administrative decision except in unusual circumstances. See *Walker County School District v. Bennett,* 203 F. 3d 1293, 1299 (11th Cir. 2000), cert. denied 531 U.S. 1059, 121 S. Ct. 670, 148 L. Ed. 2d 572 (2000), *Springer by Springer v. Fairfax County Schoolboard*, 134 F.3d 659, 667 (4th Cir. 1998), *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993), cert. denied 513 U.S. 825, 115 S. Ct. 90, 130 L. Ed. 2d 41(1994), *Roland M. v. Concord Sch. Comm*., 910 F.2d 983, 997 (1st Cir. 1990), cert. denied, 499 U.S. 912, 111 S. Ct. 1122, 113 L. Ed. 2d 230 (1991), *Burlington v. Department of Educ*., 736 F.2d 773,790 (1st Cir. 1984), aff'd, 471 U.S. 359, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985), *Plainville Bd. of Educ. v. R.N.*, 09 CV 241 (RNC), 2009 U.S. Dist. LEXIS 61693, 8-9 (D. Conn. July 10, 2009), *W.H. v. Clovis Unified Sch. Dist*., 2008 U.S. Dist. LEXIS 99097 (E.D. Cal. Nov. 25, 2008), *Handleman v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 77814 (W.D.N.Y. Oct. 19, 2007) and *K. C. v. Bd. of Educ*., 2007 U.S. Dist. LEXIS 37439 (D. Md. May 22, 2007)**.**

The standard concerning the admission of additional evidence in the review of the administrative decision below most often adhered to by the courts is that expressed by the First Circuit Court of Appeals in *Burlington*, 736 F.2d 773. See e.g., *W.H.*, 2008 U.S. Dist. LEXIS 99097, *Handleman*, 2007 U.S. Dist. LEXIS 77814, *K.C.*, 2007 U.S. Dist. LEXIS 37439 and *P.S. v. Brookfield Bd. of Educ*., 364 F. Supp. 2d 237, 239 (D. Conn. 2005). Under this standard, where evidence could have been  provided during the administrative hearings, that evidence is rebuttably presumed to be foreclosed from adding to or supplementing the record; furthermore, evidence will not be accepted that is cumulative or repetitive of evidence presented during the administrative process. *Ojai Unified Sch. Dist,* 4 F.3d at1473;  *W.H.*, 2008 U.S. Dist. LEXIS 99097, 9-10 and 12; *Handleman*, 2007 U.S. Dist. LEXIS 77814; *K.C.*, 2007 U.S. Dist .LEXIS 37439, at 9, 15-16; *P.S.*, 364 F. Supp at 239.

U.S. District Court Judge Michael Telesca's well-reasoned ruling denying the plaintiff parents' motion to supplement the record of the administrative proceedings in *Handleman*, 2007 U.S. Dist. LEXIS 77814, 9-16, is particularly instructive and presents a proper guide for this Court:

> Although the Second Circuit has yet to define the precise contours of the IDEA's additional evidence provision, the Court believes that the Second Circuit would adopt the Burlington standard because it represents the approach adopted by a majority of those Circuits deciding the issue. . ..
>
>     *    *    *
>
> . . . . As the Burlington court recognized, there are important policy reasons why, in the absence of persuasive justification, courts should not receive additional evidence at the judicial review stage of an IDEA proceeding. See *Burlington*, 736 F.2d at 791. First, taking additional evidence delays the resolution of the dispute and undercuts IDEA's goal of finality. . . .
>
> Second, a relaxed approach to admitting additional evidence undercuts one of the purposes of the due process hearing -- developing a complete factual record. See, e.g., *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 790 (2d Cir. 2002). An open-ended additional evidence standard might create a disincentive for a party to present its strongest case, which might involve costly expert witnesses, at the hearing. See *Burlington*, 736 F.2d at 791. Thus, consistent with the above statements and the policy reasons recognized in *Burlington* and other cases, a court should receive additional evidence at the judicial review stage of an IDEA proceeding only if the movant provides a particularized and compelling justification for doing so. This showing should include an explanation both as to why the evidence was not presented at the administrative level and why it is probative of the issues before the court. . . .
>
> Moreover, the April 24, 2006 letter is also rejected since plaintiff made her written post-hearing submission to the IHO on May 23, 2006, a full month after the April 24, 2006 letter. Plaintiff chose not to submit the letter to the IHO at that time and is not allowed to do so at this time. See *Beth B. v. Van*

> *Clay*, 211 F. Supp. 2d 1020, 1025 (N.D.Ill. 2001) (stating that
> trial court must be careful not to allow supplemental evidence
> to change character of action from one of review to a trial de
> novo and should consider reason evidence was not available
> at administrative hearing). . . .

In the instant case the plaintiffs attempt to supplement the administrative hearing record with eight documents (S-1 to S-8), each of which was available well prior to the close of the impartial hearings[2]. No justification for the withholding of this documentation from the IHO is offered. Further, the SRO rejected the submission of all those eight documents during his review of the IHO's decision as petitioned for by the plaintiff parents because the plaintiff parents did not timely submit it in conformity with the regulations governing the SRO. Consequently, the Court should refuse to accept such documentation as a supplementation to the record.

Furthermore, one document – S- 3 – would have been or was the subject of the testimony of witness Sanchez, who testified during the administrative proceedings. Such evidence is cumulative and redundant. Another document – S-8– is comprised of handwritten notes by an unidentified author and allegedly refer to comments made by witness Sanchez and other persons who testified at the hearings. Such evidence is speculative, inadmissable without foundation, cumulative and redundant.

Such documents should for these additional reasons not be accepted to supplement the record. See e.g., *Plainville Bd. of Educ. v. R.N.*, 2009 U.S. Dist. LEXIS 61693, *W.H. v. Clovis Unified Sch. Dist.*, 2008 U.S. Dist. LEXIS 99097 and *K. C. v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 37439.

Another document – S-6 – which is undated and reflects a "first report", is subject to

---

[2] Supplemental ("S") exhibit S-9 is already part of the administrative record as District Exhibit 55.

interpretation and would need to be explained in the context of what notations indicate an improvement as opposed to a report of N.B.'s status at the time of her enrollment. Such a document for this additional reason should not be accepted into evidence to supplement the record. *A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 172 (D. Conn. 2006).

**POINT II**

**THE PLAINTIFFS MAY NOT RAISE ISSUES THAT WERE NOT RAISED IN THEIR DUE PROCESS COMPLAINTS OR IN THE ADMINISTRATIVE PROCEEDINGS BELOW**

At page 18 of their memorandum of law to this Court, based upon a cursory response by District CSE Chairperson Teed to the effect that N.B. was to no longer receive at-home SEIT services in her kindergarten program (which arranged for the equivalent of those services to be delivered at school) as she had "transitioned to school age," the plaintiffs briefly contend that the District had an "illegal policy and practice of terminating all in- home therapies for disabled children as they transitioned out of preschool."

However, apart from the lack of any evidentiary support for this allegation, this "illegal policy and practice" claim was not one raised in either the plaintiffs May 7, 2007 due process complaint or November 11, 2007 amendment to that due process complaint. Nor was it a claim presented before either the IHO or SRO below.

The plaintiffs may not now be permitted to assert this claim. Their failure to assert it in their due process complaint precluded them from asserting it during the administrative hearings and from, therefore, exhausting their administrative remedies as required by the IDEA's exhaustion requirement. 20 U.S.C. §1415(f)(3)(B); *Ms. K v. City of S. Portland*, 04-275-P-S (DMC), 2006 U.S. Dist. LEXIS 7292 n.4 (D. Me. Feb. 24, 2006). Their failure to present this claim during the

7

administrative proceedings otherwise deprives the Court of jurisdiction over that claim. *Polera v. Board of Education*, 288 F.3d 478, 483 (2d Cir. 2002); see also *New Milford Bd. of Ed. v. Sergi*, 74 Fed Appx. 148, 150 (2d Cir. 2003).

## POINT III

### THE SRO'S DECISION, AFFIRMING THAT OF THE IHO, THAT THE DISTRICT PROVIDED N.B. WITH A FREE APPROPRIATE PUBLIC EDUCATION IN THE LEAST RESTRICTIVE ENVIRONMENT, SHOULD BE AFFIRMED BY THIS COURT

In this case, both the SRO and the IHO concluded that the educational placements of N.B. made by the District for the 2006-2007 and 2007-2008 school years provided her with a FAPE for, respectively, her age 4 preschool program at the Fred S. Keller School ("Keller School") and her kindergarten program at the Rockland BOCES/North Garnerville Elementary School ("North Garnerville").

The plaintiff parents contend that neither of these programs were appropriate because (1) they were not in the least restrictive environment for N.B. and (2) they did not provide a behavioral methodology program ("DIR/floortime" versus Applied Behavioral Analysis [a/k/a "ABA"]) that the plaintiff parents preferred. The IHO and SRO disagreed with these contentions.

The record establishes that N.B. is a young child with very serious disabilities, including autism, affecting her ability to learn and to socialize. Her disability includes Landau-Kleffner Syndrome, an abnormality in electrical activity in her brain which causes N.B. to have inconsistent capabilities and to have to relearn information and appropriate behavior that she has previously absorbed.

### Keller School as Least Restrictive Environment

8

The plaintiffs contend that N.B. required a "regular class 'to provide her with age appropriate role models in language and social skills'" and that her substantial learning and social deficits should be addressed by the assignment of a 1:1 aide to her in a regular classroom, combined with substantial at home services. See pages 14 to 25 of plaintiff's memorandum of law.

However, the record establishes that for the 2006-2007 school year, the plaintiff parents requested, and the District acceded to the plaintiff parents' request, for the District-paid placement of N.B. in the Keller School's 6:1+2 special class (a class which used ABA therapy). The record further establishes that the plaintiff parents were at all times aware that that program involved a self-contained class, that they agreed to place N.B. in that class (and enrolled her in it) and that, as per the IEP they agreed that, "[s]hould it be appropriate to move [N.B.] to an integrated classroom, the Committee will hold a meeting and document the change to reflect that recommendation."

As the SRO noted, the plaintiff parents did not raise a concern during N.B.'s attendance at the Keller School that this placement was not in the least restrictive environment for N.B.; nor did they indicate such an objection in their May 7, 2007 due process complaint notice (a document prepared by their attorney which set forth myriad other objections to the program at the Keller School). As even the plaintiff parents took the position that N.B. needed to be educated in at least an integrated special education classroom (i.e., made up of non-disabled students to provide models for the disabled students), a regular classroom was never the issue.

N.B.'s program at the Keller School clearly provided non-disabled student models for NB. It combined students from the Keller School's day care program with the preschool students in N.B.'s self-contained class for all but one-half hour each day and provided N.B. with the opportunity to participate in activities with these non-disabled peers throughout the school day. SRO Decision at pages 11-12. The Keller School included N.B. in school programs with nondisabled children to

the maximum extent possible.

The Keller School program also provided N.B. with all the supplemental services she had received before her enrollment at the Keller School (when she had been in a less intensive preschool program). Nonetheless, at the commencement of the program it was determined that coming out of the preschool program that N.B. had previously been in, even with the supplemental services she previously had available to her, she lacked a number of significant prerequisite skills, such as following teacher directions, sitting in her seat, and social/play skills that were necessary for her to function in, and benefit from, a preschool program designed to move N.B. towards kindergarten. The record thus established that the kind of preschool program N.B. had been in previously was not serving her special education needs . It further established that N.B. made substantial progress both academically and socially at the Keller School.

Concerning the summer program for N.B., the CPSE specifically considered the question of whether N.B. could be adequately educated in a regular class type setting with supplemental services and concluded that "[t]he student continues to require a special education program to be provided for extended school year, during the months of July and August, in order to prevent substantial regression" and that the option of a general education setting with support services "was rejected because [N.B.]'s current academic functioning, social needs, physical needs and language processing needs indicates that a more intensive setting with support is needed to address her needs." D-27 at pages 1 and 8. This conclusion, though the subject of parental disagreement, was not rebutted in the record.

The CSE, IHO and SRO all concluded that N.B.'s special education needs for her final extended preschool year could not be satisfactorily met in a regular classroom program with the benefit of supplemental aids and services and that those needs required the individually tailored

program created for N.B. at the Keller School.

There was no evidence presented as to the program at the Montclair State University Preschool program in which the plaintiff parents unilaterally placed N.B. commencing in January of 2007. There was no evidence presented to establish that that program (or any other acceptable to the plaintiff parents) involving a general education setting was, contrary to the conclusions of the CPSE, IHO and SRO, suitable for a student with N.B's particular special education needs during the 2006-2007 school year (and following summer) as compared with the Keller School's program.

Under these circumstances, the SRO concluded (as had the CPSE and IHO) that the Keller School had constituted the least restrictive environment for educating N.B. and addressing her specific special education needs. The SRO and IHO further appeared to conclude that the plaintiff parents' belated claim that the Keller School was not the least restrictive environment for a successful program for N.B. was a concern invented well after the plaintiff parents had removed N.B. from the Keller School for a myriad of other alleged reasons as detailed in their due process complaint at IHO-1.

**North Garnerville As Least Restrictive Environment**

For the 2007-2008 school year, N.B. was moving into her school age years as this was to be her kindergarten year. Based upon input from providers, annual review testing, parent input and observations, staff input and committee discussion, the CSE recommended that N.B. attend North Garnerville Elementary School in an 8:1+2 special class for the 2007-2008 school year and that N.B. receive a number of related services in school including: individual occupational therapy five times per week; individual physical therapy four times per week; individual speech/language therapy twice weekly; group (2:1) speech/language therapy three times per week and parent counseling and training. IHO-3 at page 2; SRO at pages 14-15.

11

As the SRO explicitly recognized, the CSE noted in N.B.'s IEP the substantial needs of N.B. and developed annual goals to address her deficits in study skills and prepare her for her in-school education now that she was entering kindergarten, "including following a classroom routine by independently working on seat-time activities; attending to tasks without distraction during group lessons; pre-reading skills including sequencing and grouping; pre-math skills including sorting and concepts of more/less/the same; oral/motor feeding skills; articulation, expressive language skills; play skills; her ability to transition without tantrums; gross and fine motor skills; social interaction skills; and basic cognitive and daily living skills." SRO Decision at page 15.

N.B.'s program at North Garnerville clearly provided non-disabled student models for NB. As the SRO noted and the record reflects, the North Garnerville program provided substantial interaction of its students with non-disabled students, while still providing the substantial individualized professional special education teacher and teaching assistant assistance and instruction to the students in this small class that N.B. needed. SRO Decision at pages 15-16. That program included its students in school programs with nondisabled children to the maximum extent possible.

Further, as the SRO noted, in the North Garnerville program there was a constant communication between the related service providers and the teacher and teaching assistants who carry out the students' related service goals throughout the week" which would be lacking in a program in which many such service providers would be, as in the case of the Montclair State University schools or the Montessori school, working with N.B. at home. SRO Decision at page 16.

The CSE, IHO and SRO all concluded that N.B.'s special education needs for kindergarten could not be satisfactorily met in a regular classroom program with the benefit of supplemental aids and services and that those needs required the individually tailored program created for N.B. at

North Garnerville. The plaintiff parents presented no evidence that a regular classroom environment was suitable for N.B for her kindergarten school year and, despite their eventual placement of N.B. in a regular Montessori class (with no special education component whatsoever), contended in their November 11, 2007 amendment to their due process complaint that an "integrated program" was what N.B. required.

The SRO concluded that the North Garnerville program was, as the CSE and IHO had previously concluded, "appropriate to meet the student's identified special education needs in the LRE." SRO Decision at page 17.

As with the 2006-2007 school year, there is no evidence in the record which establishes that N.B. would receive adequate educational benefit from the programs in which she was enrolled by the plaintiff parents during the 2007-2008 school year with supplemental home based services (and a teaching assistant assigned to her); nor is there evidence to establish that a more "fully integrated" program (e.g., one involving no pull-outs) than that at North Garnerville (which had no pull-outs) would serve her special education  needs or existed for the 2007-2008 school year.

The SRO's determination as to the District's proposed programs providing an appropriate program for N.B. in the least restrictive environment (i.e., a FAPE) are entitled to substantial deference. As the Court of Appeals stated in *P. v. Newington Bd. of Educ.*, 546 F.3d 111, 118 and 120 (2d Cir. 2008),  a case heavily relied upon by the plaintiffs, in the context of the determination of least restrictive environment, just as with the determination of whether an IEP otherwise provides a student with an appropriate education, the "'role of the reviewing court in making these assessments is circumscribed' under the IDEA and the Supreme Court's decision in *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)" and "[a]lthough school officials' decisions are subject to 'independent'

judicial review, the 'responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers'" and the "courts must keep in mind our deferential position with respect to state educational authorities crafting educational policy."

The Court is also directed to the following post-*Newington* decisions: *L. v. N. Haven Bd. of Educ.*, 624 F. Supp. 2d 163 (D. Conn. 2009), *E.G. v. City Sch. Dist. of New Rochelle*, 606 F. Supp. 2d 384 (S.D.N.Y. 2009) and *J.A. v. E. Ramapo Cent. Sch. Dist.*, 603 F. Supp. 2d 684 (S.D.N.Y. 2009).

In *N. Haven Bd. of Educ.*, the district court noted that the parents' conduct, such as a failure to consent to a behavior plan, deprived them of the ability to assert that the program adopted or implemented by the school did not provide the least restrictive environment. In the instant case, the plaintiff parents selected, insisted upon and agreed to the program at the Keller School to which the District acceded and did not object to or complain of the "more restrictive" nature of that program for N.B. until long after they removed N.B. from it and had unilaterally placed her in another school.

In both *City Sch. Dist. of New Rochelle* and *E. Ramapo Cent. Sch. Dist*, this Court reaffirmed the substantial deference owed to the SRO and educators as concerns the determination of what constitutes the least restrictive environment for a student. In *E. Ramapo Cent. Sch. Dist*, 606 F. Supp. 2d at 390-391, sitting by designation in this Court, U.S. District Judge William G. Young held that given the educational needs of the student as established by the testimony of the witnesses, indicating that the student needed a highly structured environment to develop social and language skills:

> [T]he Court finds that the District has complied with the least restrictive environment mandate. "While including students in the regular classroom as much as is practicable is undoubtedly a central goal of the IDEA, schools must attempt to achieve that goal in light of the equally important objective

14

of providing an education appropriately tailored to each student's particular needs." *Newington*, 546 F.3d at 122, 546 F.3d at 122. Powers and Whitman provided convincing educational rationales for A.G.'s placement in Powers' class during the afternoons. Such explanations are not easily ignored, especially where the Court's review is "tinged with a significant degree of deference to the state educational agency." Id. at 118. In light of this testimony, it cannot be said that the education program is overly restrictive. Rather, it adequately balances the maximizing mandate of the IDEA with its individually-tailored mandate. Statutory terms like "appropriate" do not admit of mathematical precision.

**The Dispute As To Methodology**

Concerning the dispute between the parties as to the ABA methodology utilized by the Keller School and North Garnerville as opposed to that the plaintiff parents preferred (i.e., DIR/floortime), there was ample testimony in the record provided by trained educators employed by the District and by the schools implementing the District's program as to the continued benefit and utility for N.B. of the ABA methodology used at both the Keller School and North Garnerville.

When it comes to methodology, despite the limited evidence presented by the plaintiff parents as to the alleged greater efficacy of the DIR/floortime methodology, deference is clearly owed to the witnesses who testified in support of the District's position during the hearings and to the SRO's conclusions that the programs provided N.B. with a FAPE. *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186 (2d Cir. 2005); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377 (2d Cir. 2003). As the Court of Appeals stated in *Cerra,* 427 F.3d at 195:

> In order to avoid "'impermissibly meddling in state educational methodology,'" a district court "must examine the record for any 'objective evidence' indicating whether the child is likely to make progress or regress under the proposed plan." Id. (quoting *Mrs. B.*, 103 F.3d at 1121). Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy. See, e.g., *M.S.*, 231 F.3d at 105 ("An assessment of educational progress is a type of judgment for which the

15

district court should defer to the SRO's educational experience, particularly where . . . the district court's decision was based solely on the record that was before the SRO."). We have not hesitated to vacate district court opinions where the district court "erred in substituting its judgment for that of the agency experts and the hearing officer." *Briggs v. Bd. of Educ.*, 882 F.2d 688, 693 (2d Cir. 1989); see also *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383, 74 Fed. Appx. 137 (2d Cir. 2003) ("In violation of *Rowley*, the District Court impermissibly chose between the views of conflicting experts on a controversial issue of educational policy - effective methods of educating dyslexic students - in direct contradiction of the opinions of state administrative officers who had heard the same evidence."); *M.S.*, 231 F.3d at 105 ("We believe the district court thus inappropriately substituted its own subjective judgment about what are appropriate measures for educational progress.").

In the instant case, the SRO's conclusions that the IEPs in question provided N.B. with a

FAPE as concerns the ABA methodology utilized in the programs were in complete conformity

with that of the trained educators – each of whom possessed advanced degrees in special education

and/or related services and extensive experience – who testified in support of the appropriateness

of those programs for N.B. As such, they are particularly subject to substantial deference. *Heather*

*S. v. State of Wisconsin*, 125 F.3d 1045, 1057 (7th Cir. 1997) ("A court is particularly incapable of

making such judgments, which is why it must defer to trained educators . . . . We note that the

deference is to trained educators . . . ."); *Bd. of Educ. of Montgomery County v. Brett*, 155 F.3d 557

(Table), 1998 U.S. App. LEXIS 13702, at * 40, n. 24 (4th Cir. June 26, 1998) ("[W]e must defer to

educators' decisions as long as an IEP provided the child 'the basic floor of opportunity that access

to special education and related services provides.'"); *Watson v. Kingston City Sch. Dist.*, 325 F.

Supp. 2d 141, at 145 (N.D.N.Y. 2004) ("The mere fact that a separately hired expert has

recommended different programming does nothing to change this, as deference is paid to the

District, not a third party.").  This  deference  is  further mandated where, as here, the most

substantive issue in dispute was, and remains, the educational methods to be utilized in addressing

16

N.B.'s particular disabilities, i.e., a self-contained classroom versus a regular classroom and ABA methodology versus DIR/floortime methodology. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207, 102 S. Ct. 3034; 73 L. Ed. 2d 690 (1982) ("[C]ourts must be careful to avoid imposing their view of preferable educational methods upon the States."); *Grim*, 346 F.3d at 383; *Cerra,* 427 F.3d at 195.

Finally, the issue in such a case as this is **not** whether the educational program developed by the District for the 2006-2007 and 2007-2008 school years for N.B.was better or more effective than (or even as good or effective as) that cobbled together by the plaintiff parents at the Montclair State University schools or the Montessori school, but rather, whether the District's programs were "reasonably calculated to enable the child to receive educational benefits," i.e., to permit the child to benefit from the instruction. *Rowley*, 458 U.S. at 188 and 200- 02; *Grim*, 346 F.3d at 379 and 381 (IEPs are "not required to 'furnish[] . . . every special service necessary to maximize each handicapped child's potential,' [citing *Rowley*]. Rather, the IDEA requires that IEPs provide a 'basic floor of opportunity,' consisting of services that are 'individually designed to provide educational benefit' to a child with a disability."); *M.C.*, 226 F.3d at 62. *See also Viola*, 414 F. Supp. 2d at 381-82. Consequently, for example, the fact that the DIR/floortime methodology was not continued by the District for the 2007-2008 school year kindergarten program does not render that program at North Garnerville inappropriate; nor does the fact that the Keller School and North Garnerville programs involved self-contained classrooms. The SRO properly found that each program provided N.B. with a FAPE and that finding is entitled to substantial deference.

### POINT IV

**THE PLAINTIFFS FAILED TO SATISFY THEIR BURDEN OF ESTABLISHING THAT THEIR UNILATERAL PLACEMENTS WERE APPROPRIATE FOR N.B FOR EITHER THE 2006-2007 OR 2007-2008 SCHOOL YEARS AS DETERMINED BY THE IHO**

It is indisputable that in order to recover tuition reimbursement for the relevant school years, the plaintiffs had the burden under the IDEA of establishing during the administrative proceedings that the Montclair State University school(s) and/or the Montessori school was an appropriate placement to meet N.B.'s "unique needs." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007); *Green v. N.Y. City Dep't of Educ.*, 07 Civ 1257 (PKC), 2008 U.S. Dist. LEXIS 32118 (S.D.N.Y. Mar. 31, 2008).

The plaintiff parents provided no evidence during the administrative proceedings (and have still provided no evidence through their attempt to supplement the record) to establish that any of the schools in which the plaintiff parents unilaterally placed N.B. provided a program specifically designed to meet the unique needs of N.B. They, in fact, provide no evidence concerning those programs whatsoever and insisted that the N.B.'s unique special education needs would be met by supplemental services outside of the school programs. As such, the plaintiff parents are not entitled to tuition reimbursement for any of these unilateral placements. *Gagliardo*, 489 F.3d at 114; *Thies v. N.Y. City Bd. of Educ.*, 07 Civ 2000 (RMB), 2008 U.S. Dist. LEXIS 11354 (S.D.N.Y. Feb. 4, 2008) (noting defendant's argument that the child's special education needs were met, not through the school, but through supplemental private counseling and therapeutic services, and concluding that plaintiff had not demonstrated that the private placement was appropriate); *Green*, 2008 U.S. Dist. LEXIS 32118 at 19 ("Ivy Ridge did not provide Donna with math assistance or counseling services. Plaintiff concluded that Donna needed those services and chose to obtain them directly with outside agencies. It is appropriate for the hearing officers and the Court to take these circumstances into consideration.").

The lack of such evidence presented by the plaintiffs during the administrative proceedings (and even through their attempt to supplement the administrative record) demonstrates that the IHO was correct in concluding that the plaintiffs had failed to meet their burden and were, therefore, not

entitled to tuition reimbursement even if the District had not provided N.B. with a FAPE during either of the two school years at stake. The IHO's decision that the plaintiffs had failed to meet their burden was fully supported by the record and, as it was not rejected by the SRO, is entitled to deference by this Court.  *Gagliardo*, 489 F.3d at 113-114 and n.2; *Jennifer D. v. N.Y. City Dep't of Educ.*, 550 F. Supp. 2d 420, 436 n. 14 (S.D.N.Y. 2008).

The fact that the Montclair State University school(s) or the Montessori school might be preferred by parents like the plaintiff parents in this case does not demonstrate their appropriateness for N.B. during the 2006-2007 or 2007-2008 school years; nor does the plaintiffs parents' claims (even if they had been supported) that N.B. did better at Montclair State University Preschool than they perceived she did at the Keller School or that she did well at the Montessori school. *Gagliardo*, 489 F.3d at 115; *R.C. ex rel. N.C. v. Bd. of Educ.*, 07-CV-2806 (KMK), 2008 U.S. Dist. LEXIS 52084 (S.D.N.Y. June 27, 2008)*; Thies*, 2008 U.S. Dist. LEXIS 11354.

## POINT V

### THE PLAINTIFFS ARE BARRED FROM RECOVERING TUITION REIMBURSEMENTS FOR THEIR UNILATERAL PLACEMENTS OF N.B. BECAUSE THEY FAILED TO PROVIDE STATUTORY ADVANCE NOTICE OF THOSE PLACEMENTS

Under 20 U.S.C. § 1412(a)(10)(C)(iii)(1) (aa) and (bb) where an IEP is rejected by parents and a student is unilaterally placed in a private school by the parents, the parents must give 10 days advance written notice of their rejection of the IEP and their decision to place the student in a private school; this obligation applies even where the student attended a private school in prior years. The plaintiff parents in this case are barred from tuition reimbursement by their failure to meet that requirement for the 2006-2007 school year as to their placement of N.B. in the Montclair State University Preschool and for the 2007-2008 school year as to their placement of N.B. at the

Montessori school. *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 376 (2d Cir. 2006); *Greenland Sch.*

*Dist. v. Amy N.*, 358 F.3d 150, 161-162 (1st Cir. N.H. 2004)[3]; *Ms. M. v. Portland Sch. Comm.*, 360

F.3d 267, 273 (1st Cir. 2004)*; Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 524 (6th Cir. 2003)[4];

*Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21**,** 27 (1st Cir. 2002)[5]; *Arlington Cent. Sch. Dist.*

---

[3]"Katie's parents argue that even if they did not give sufficient notice to Greenland for Katie's fifth grade year, they did provide sufficient notice that Katie would be attending LSA by the time of her sixth grade year. Although Greenland was certainly aware that Katie might be attending LSA for the fall semester of her sixth grade year, that fact is beside the point The purpose of the notice requirement is to give public school districts the opportunity to provide FAPE before a child leaves public school and enrolls in private school. See *Patricia P.*, 203 F.3d at 468 (emphasizing the importance of cooperation between parents and the school district before the child is removed from public school); *Schoenfeld*, 138 F.3d at 381-82 (same); *Burlington v. Department of Educ.*, 736 F.2d 773, 799  (1st Cir. 1984) (noting the distinction 'between a unilateral parental transfer made after consultation with the school system . . . and transfers made truly unilaterally, bereft of any attempt to achieve negotiated compromise and agreement'), aff'd, 471 U.S. 359, 85 L. Ed. 2d 385, 105 S. Ct. 1996 (1985). Once a child's parents have unilaterally removed the child from public school, subsequent notice almost a year after removal does little good.

As the Supreme Court warned almost twenty years ago, 'parents who unilaterally change their child's placement . . . without the consent of state or local school officials, do so at their own financial risk.' *Burlington*, 471 U.S. at 373-74. This case demonstrates that the Court's admonition remains no less true today**.**"

[4] "Plaintiffs admitted during the due process hearing that they did not inform the IEP team at the May 1999 meeting either that they rejected the placement, or that they intended to enroll Travis in a private school.

Plaintiffs argue that the July 23, 1999 letter requesting a due process hearing constituted written notice that satisfied the statute because Travis was not officially removed until more than 10 days later. The evidence showed, however, that plaintiffs arranged to enroll Travis at MCA before requesting the due process hearing or advising defendant of its specific objections and intent to remove their child from public school. Not only did the letter demonstrate that plaintiffs were removing Travis from the public school, but their subsequent rejection of the offer to either have another meeting or engage in mediation through the Department of Education confirmed it. We are not persuaded by the assertion that Travis was not removed from the public school until plaintiffs sent a letter to the principal in late August 1999, stating that Travis would not be attending Heritage Elementary. We are satisfied that the district court did not err in finding that plaintiffs failed to provide the notice required by the IDEA."

[5] "IDEA requires that at least ten business days prior to the removal of the child from public school, a parent provide written notice that she is rejecting the placement proposed in the

*v. D.K.*, 02 Civ. 2117 (DLC), 2002 U.S. Dist. LEXIS 21849 (S.D.N.Y. Nov. 14, 2002).

## POINT VI

### THE BALANCING OF THE EQUITIES WARRANTS DENIAL OF TUITION REIMBURSEMENT TO THE PLAINTIFFS FOR THE 2007-2008 SCHOOL YEAR

The plaintiff parents failed to cooperate with the District's efforts to determine an appropriate placement for N.B. by refusing to consent to a psychological evaluation of her as requested by the CSE and further refusing to authorize the release of N.B.'s educational records to neuropsychologists employed by the District to perform an analysis of appropriate evaluations and tests to be administered for purposes of reevaluating N.B.'s special education needs before the determination of N.B.'s IEP for the 2007-2008 school year. This failure to cooperate causes a forfeiture of the plaintiff parents' claim for tuition reimbursement for their unilateral placements of N.B. during the 2007-2008 school year. 20 U.S.C. § 1412(a)(10)(C)(iii); *Patricia P. v. Board of Ed. of Oak Park & River Forest High School Dist No. 200*, 203 F.3d 462, 468-469 (7th Cir. 2000).

## CONCLUSION

For the reasons set forth herein, the plaintiffs' motion under Fed. R. Civ. P. 56 should be denied, the District's motion under Fed. R. Civ. P. 56 should be granted in all respects, the Amended Complaint should be dismissed with prejudice and the District should be granted such other and further relief as to the Court may seem just and proper.

---

IEP and enrolling the child in private school at public expense. 20 U.S.C. § 1412(a)(10)(C)(iii). Rafferty claims that she missed the deadline because she was ill with cancer. . . . While there is evidence on the record that Rafferty could take care of her affairs, such as Rafferty's completion of the Langsford questionnaire, there is insufficient countervailing evidence that her illness left her unable to inform the District that she was removing Emily from the District and placing her in private school because the District had not provided a FAPE."

Dated: September 14, 2009

Respectfully submitted,

**SHAW, PERELSON, MAY & LAMBERT, LLP**
Attorneys for Defendant

By                    S/
Mark C. Rushfield, Esq. (MCR 0231)
(of Counsel to the Firm)
21 Van Wagner Road
Poughkeepsie,  New York 12603
(845) 486-4200