UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

G.B. and L.B., on behalf of their minor child, N.B.,
and on their own behalves,

                              Plaintiffs,                              Case No. 09-CV-859 (KMK)

          -v-                                                          OPINION AND ORDER

TUXEDO UNION FREE SCHOOL DISTRICT,

                              Defendant.

Appearances:

Michael Howard Sussman, Esq.
Mary Jo Whateley, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Plaintiffs*

Mark Craig Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
Poughkeepsie, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

On August 15, 2011, the Court entered judgment for Plaintiffs in the amount of

$71,041.25 in tuition reimbursement in this civil rights action brought under the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  Plaintiffs now move for an award

of attorneys' fees and expenses incurred during the course of the litigation.  For the reasons

stated herein, Plaintiffs' motion is GRANTED as modified.  The Court awards attorneys' fees to

Plaintiffs in the amount of $76,038 and costs in the amount of $425.

I. Background

A. Facts and Procedural History

"G.B." and "L.B." (collectively, "Plaintiffs"), on behalf of their daughter "N.B.," brought this action against the Tuxedo Union Free School District ("the District" or "Defendant") for violations of the IDEA.[1]  Plaintiffs alleged that individualized education plans ("IEPs") produced by the District violated the statutory requirement that children with disabilities be educated with non-disabled children "[t]o the maximum extent appropriate."  20 U.S.C. § 1412(a)(5)(A).[2] Following an unfavorable ruling from an Impartial Hearing Officer ("IHO") and denial of appeal by a State Review Officer ("SRO") for the New York State Education Department, Plaintiffs sued the District in this Court.  Plaintiffs sought, inter alia, reimbursement of N.B.'s tuition from February through June 2007, and the entire 2007-2008 school year.  Both sides moved for summary judgment.

On September 30, 2010, the Court entered an Opinion and Order granting Plaintiffs' motion for summary judgment and denying Defendant's cross-motion for summary judgment. (Dkt. No. 23.)  On August 15, 2011, the Court issued an Order granting Plaintiffs a partial tuition reimbursement in the amount of $71,041.25, covering the tuition costs for May and June 2007 and the full tuition for the 2007-2008 school year.  (Dkt. No. 28.)  On equitable grounds, the Court declined to grant tuition reimbursement for February to April 2007 because Plaintiffs

---

[1] For a more complete recitation of the facts and procedural history of this action, *see G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552 (S.D.N.Y. 2010).

[2] Plaintiffs argued that two IEPs produced by the District for N.B. failed to comport with the "mainstreaming" requirement of the IDEA.  The two IEPs in dispute were created for the 2006-2007 and 2007-2008 academic years.

failed to give proper notice to the District before removing N.B. from her public school.[3]  On

August 30, 2011, Plaintiffs filed the instant Motion for Attorney Fees.  (Dkt. No. 30.)

     B. Plaintiffs' Attorneys

Plaintiffs were represented by Mary Jo Whateley, a Senior Staff Attorney with the Legal

Services of the Hudson Valley ("LSHV") and Michael H. Sussman, named partner of the law

firm Sussman & Watkins.[4]  Ms. Whateley began representing Plaintiffs on July 17, 2008, when

they contacted LSHV seeking representation in their appeal of the unfavorable IHO decision to

the SRO.  (Aff. of Mary Jo Whateley in Supp. of Mot. for Award of Att'y Fees and Costs

("Whateley Aff.") ¶ 3.)  After the denial of Plaintiffs' appeal by the SRO, Mr. Sussman agreed

on December 19, 2008 to co-counsel the case with Ms. Whateley in federal court.  (*Id.* ¶¶ 10-11.)

Ms. Whateley has been admitted to practice law in New York since 1996 and began

working as an associate in the Law Offices of Michael H. Sussman in 1996.  (*Id.* ¶ 18.)  She

joined LSHV in 2001 and worked in its Domestic Violence and Housing Units until September

2005,[5] when she transferred to LSHV's Children's Unit.  (*Id.* ¶¶ 18-19; Reply Aff. of Mary Jo

_____

[3] The IDEA provides that the cost of reimbursement may be "reduced or denied if . . . 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency."  20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb).  On January 10, 2007, Plaintiffs notified, via telephone, the Chairperson of the District's Committee on Preschool Education (CPSE) that they had removed N.B. from the public placement effective January 2, 2007, and that they intended to enroll N.B. in a private placement by the end of January 2007.  However, no written notice was provided by Plaintiffs to the District until May 2, 2007, when they filed a due process complaint seeking reimbursement for the cost of attendance at the private placement, and requesting a hearing before an IHO.

[4] Ms. Whateley has since left LSHV and now is employed by Sussman & Watkins.

[5] In her Affidavit in Support of the Motion for Award of Attorney Fees and Costs, Ms. Whateley stated that she began working with the LSHV Children's Unit in September 2006.  (Whateley Aff. ¶ 19.)  However, in her Reply Affirmation, she states that she made an error in her original affidavit and actually began covering special education cases in September 2005.  (Reply Aff. in

Whateley in Supp. of Pls.' Mot. for Att'ys' Fees and Costs ("Whateley Reply Aff.") ¶ 2.)[6]  Since

that time, she has primarily represented children with disabilities under the IDEA in Orange,

Sullivan, Ulster, and Dutchess Counties.  (Whateley Aff. ¶ 19.)  In 2008, Ms. Whateley was

made Senior Staff Attorney of LSHV's 7-county Child Advocacy Unit, which in addition to the

four counties previously listed, also represents children in Rockland, Westchester, and Putnam

Counties.  (*Id.* ¶ 20.)  Additionally, while employed by the Sussman Law Firm from 1996 to

2001, Ms. Whateley worked on numerous civil rights cases, several of which were brought under

the IDEA.  (Whateley Reply Aff. ¶ 4.)  Ms. Whateley states in her affidavit that she is regularly

recognized as having expertise in the special education field and lists several Continuing Legal

Education ("CLE") and other training sessions which she has provided on special education law

since 2008.  (Whateley Aff. ¶¶ 21-23.)

Mr. Sussman is a named partner at the law firm Sussman & Watkins.  He graduated with

honors from law school in 1978.  From 1978 to 1981, he worked as a litigator in the Civil

Division Honors Program of the United Stated Department of Justice.  (Aff. of Michael H.

Sussman in Supp. of Mot. for Reasonable Fees and Costs ("Sussman Aff.") ¶ 2.)  In 1981, Mr.

Sussman joined the national office of the National Association for the Advancement of Colored

People ("NAACP"), where he was responsible for housing, school, voting rights, and

employment discrimination litigation.  (*Id.* ¶ 2.)  Beginning in June 1981, he served as chief

legal counsel for the Yonkers Branch NAACP and represented a class of 40,000 Hispanic and

African-American Yonkers residents in a housing desegregation case before the Honorable

Supp. of Pls.' Mot. for Att'ys Fees and Costs ("Whateley Reply Aff.") ¶ 2 n.1.)

[6] During 2003, Ms. Whateley worked as a Child's Advocate for LSHV in Rockland County, and then transferred back to the Housing Unit in 2004.  (Whateley Aff. ¶ 18.)

4

Leonard B. Sand that lasted for over twenty-five years.  (*Id.*)  In 1986, Mr. Sussman opened his own practice focusing on civil rights litigation and since that time has litigated over 600 cases in the Southern District of New York and has argued over 250 appeals in the United States Court of Appeals for the Second Circuit.  (*Id.* ¶¶ 5-6.)  Mr. Sussman notes that he has extensive experience in civil rights litigation and has presented over ten CLE courses to lawyers on civil rights issues, including those relating to special education.  (*Id.* ¶ 6.)  Mr. Sussman has litigated numerous special education cases since 1986, both administratively and in federal court, and in at least 40 of those cases, Defendant's counsel also served as opposing counsel.  (Reply Aff. of Michael H. Sussman in Supp. of Mot. for Att'y Fees and Costs ("Sussman Reply Aff.") ¶ 3.)

Ms. Whateley seeks compensation for 219 hours, which include both working and travel time.  She seeks a rate of $300 per hour for the 209.5 hours of work she performed, and $150 per hour for 9.5 hours of travel time, totaling $64,275.00.  (Whateley Aff. ¶ 17, Ex. 1.)[7]  Mr. Sussman seeks compensation for 36.5 hours of work at a rate of $450 per hour, totaling $16,425.00.  (Sussman Aff. ¶¶ 7, 9, Att. A.)[8]  Plaintiffs also seek reimbursement for the costs of the litigation, which include a $350 filing fee and a $75.00 service of process fee.  (*Id.* ¶ 10.)

---

[7] In her Affirmation, Ms. Whateley states that she is seeking $64,225 in legal fees, but this appears to be a math or typographical error.  (Whateley Aff. ¶ 17.)

[8] In Attachment A to the Affirmation, Mr. Sussman states that he is seeking $16,375 in legal fees, but this appears to be a math or typographical error.  (Sussman Aff. Att. A.)

## II. Discussion

### A. Prevailing Party

#### 1. Legal Standard

The IDEA provides that "[i]n any action or proceeding brought under [the IDEA], the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i). The Second Circuit has specified that an "action or proceeding" includes both administrative hearings and litigation before federal courts.  *See A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.* 407 F.3d 65, 75 (2d Cir. 2005).  "In considering a claim for attorney's fees under a federal fee-shifting statute, a district court must ordinarily make two determinations."  *Mr. L. v. Sloan*, 449 F.3d 405, 407 (2d Cir. 2006).  First, the court must determine whether the party seeking the award is the prevailing party.  *Id.*  If so, "the court then must determine whether, under the appropriate standard, that party should be awarded attorneys' fees."  *Id.*

#### 2. Analysis

As a threshold matter, the Court must determine whether Plaintiffs are the prevailing party.  *See id.* at 407.  The Second Circuit has held that Congress intended the term "prevailing party" to be construed consistently under the IDEA and other fee-shifting statutes, under the standard set forth by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).  *See J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 123 (2d Cir. 2002).  Under this standard, "to be a prevailing party, one must either secure a judgment on the merits or be a party to a settlement agreement that is expressly enforced by the court through a consent decree."  *Id.* (citing *Buckhannon*, 532 U.S. at 604).  Courts within the Second Circuit have noted that the prevailing party standard has

6

been "interpreted generously" by the Supreme Court and the Second Circuit, and to be granted an award of attorneys' fees, a party "need not prevail on all issues." *B.W. ex rel. K.S. v. N.Y.C. Dep't of Educ.*, 716 F. Supp. 2d 336, 345 (S.D.N.Y. 2010) (citation omitted). Instead, the party "must 'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)); s*ee also E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 427 (S.D.N.Y. 2011) (same).

The Court granted summary judgment for Plaintiffs, holding that both of the District's IEPs failed to comport with the IDEA's mainstreaming requirements, and granting Plaintiffs tuition reimbursement for a portion of the 2006-2007 school year, and the entirety of the 2007-2008 school year. Plaintiffs therefore secured a judgment on the merits and are the prevailing party. Defendant does not dispute that Plaintiffs are the prevailing party, but argues that the fee award should be reduced by 25%, because Plaintiffs only succeeded in obtaining a partial tuition reimbursement. (Def.'s Mem. of Law in Opp'n to Pl.'s Att'ys' App. for Prevailing Party Att'y Fees ("Def's Mem.") 16.)[9] Under fee shifting statues such as the IDEA, a court can equitably

---

[9] The Court notes that there are two points at which it could evaluate the degree of Plaintiffs' success: as one of the so-called *Johnson* factors, *see* discussion *infra* Part II.B.1, which should be evaluated in determining the "presumptively reasonable fee," or as an equitable factor taken into account in determining whether Plaintiffs are the "prevailing party" that could cause the Court to award less than the "presumptively reasonable fee." Given the IDEA's requirement that the party must be a "prevailing party" to recover attorneys' fees, the Court deems it appropriate to consider Plaintiffs' degree of success (and any warranted reduction in fees) at this stage, rather than as part of the calculation of the "presumptively reasonable fee." This approach is also regularly employed by other courts in the Second Circuit. *See, e.g.*, *J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist.*, No. 10-CV-8021, 2011 WL 3251801, at *3 (S.D.N.Y. July 26, 2011) ("Building on the *Johnson* factors and the required examination of plaintiff's success, courts have previously found that the *Johnson* factors should be used to calculate the presumptively reasonable fee, which then should be reduced to the extent that plaintiffs' success was limited."); *E.S.*, 796 F. Supp. 2d at 427-28 (considering whether overall award of attorneys' fees should be

reduce the attorneys' fee award based on limited results, and a reduction may be appropriate "where a party lost on claims unrelated to the ones on which he prevailed and where the overall level of success is low." *B.W.*, 716 F. Supp. 2d at 346 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) ("Our circuit has [] clearly adopted the view . . . that a district judge[] [has the] authority to reduce the fee awarded to a prevailing plaintiff . . . by reason of the plaintiff's 'partial or limited success.'"); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (noting that the district court should exclude from fee awards "hours dedicated to severable unsuccessful claims").

Courts are directed to look at two factors when determining whether an equitable reduction of fees is warranted: the overall level of success, and if the success was limited, whether the unsuccessful claims can be separated out from the successful ones. The Supreme Court has made clear that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [and] [i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Thus, where a plaintiff's claims for relief are "'inextricably intertwined and involve a common core of facts or are based upon related legal theories,'" the claims are considered related and the fee award need not be reduced, even if the plaintiff was

---

reduced for limited success as part of "prevailing party" analysis); *Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 439-40 (S.D.N.Y. 2010) (concluding that "the correct approach" involves calculating the presumptively reasonable fee and then using a downward adjustment to reflect plaintiff's limited success); *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *3 (S.D.N.Y. Feb. 9, 2010) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff's success in the litigation." (internal quotation marks omitted)); *Robinson v. City of New York*, No. 05-CV-9545, 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) (same). The result reached here, however, would be the same regardless of the method used to incorporate Plaintiff's degree of success.

unsuccessful on some of the claims.  *E.S.*, 796 F. Supp. 2d at 427-28 (quoting *Quaratino*, 166

F.3d at 425).  "Deciding whether the successful and unsuccessful claim are 'unrelated,' however,

is not an exact science."  *Starkey v. Somers Cent. Sch. Dist.*, No. 02-CV-2455, 2008 WL

5378123, at *2 (S.D.N.Y. Dec. 23, 2008).  The Supreme Court has noted, in the context of civil

rights lawsuits, that:

> It may well be that cases involving such unrelated claims are unlikely to arise
> with great frequency.  Many civil rights cases will present only a single claim.  In
> other cases the plaintiff's claims for relief will involve a common core of facts or
> will be based on related legal theories.  Much of counsel's time will be devoted
> generally to the litigation as a whole, making it difficult to divide the hours
> expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series
> of discrete claims.  Instead[,] the district court should focus on the significance of
> the overall relief obtained by the plaintiff in relation to the hours reasonably
> expended on the litigation.

*Hensley*, 461 U.S. at 435; *see also Starkey*, 2008 WL 5378123, at *2 (same).  The task of

determining whether to reduce a fee award for limited success is left to the discretion of the

district court, and should be guided by the degree of success obtained, rather than by "a

mathematical approach comparing the total number of issues in the case with those actually

prevailed upon."  *Hensley*, 461 U.S. at 435 n.11 (internal quotation marks omitted).

    As noted, Defendant claims that Plaintiffs' overall attorneys' fee award should reduced

by 25% because of Plaintiffs' "only partial success attributable to [the] severable claim

concerning [tuition reimbursement for the] the 2006-07 school year."  (Def.'s Mem. 16.)

Defendant posits that the claims for 2006-07 and 2007-08 are severable because each school

year's IEP is subject to independent administrative review, and furthermore, because in the

instant case "different IEPs, different recommended placements, and different private schools

were involved as to each of the school years at issue."  (*Id.* at 16 n.4.)  However, Defendant's

argument overlooks the fact that the Court determined that *both* the 2006-07 and the 2007-08

IEPs violated the IDEA, and that *both* of Plaintiffs' private placements were appropriate for N.B.'s needs. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 751 F. Supp. 2d 552, 584 (S.D.N.Y. 2010). Plaintiffs thus prevailed on their claims relating to both IEPs and both private placements. The Court equitably reduced the tuition reimbursement for the 2006-07 school year (disallowing reimbursement for February through April 2007), because Plaintiffs failed to give proper notice to the District before removing N.B. from the public placement. *Id.* at 586. The equitable reduction was not a reflection of the merits of Plaintiffs' claims, nor did it have anything to do with the adequacy of the 2006-07 IEP, or of Plaintiffs' alternate private placement, as Defendant's argument suggests. (Defs.' Mem. 16.) Therefore, the Court finds that Plaintiffs' successful claims — that N.B. was denied a fair and appropriate public education ("FAPE") during both 2006-07 and 2007-08, and that Plaintiffs were entitled to tuition reimbursement for 2007-08 and part of 2006-07 — are not severable from the unsuccessful portion of plaintiff's tuition reimbursement claim for 2006-07, and therefore no equitable reduction in fees is warranted. *See B.W.*, 716 F. Supp. 2d at 353 (holding that plaintiff's claim that child was denied a FAPE, on which she prevailed, was "inextricably intertwined" with tuition reimbursement request); *accord E.S.*, 796 F. Supp. 2d at 428 (holding that plaintiff's successful and unsuccessful claims, involving two years of tuition reimbursement, were "inextricably intertwined" because they involved the same legal issues and common facts). Moreover, Plaintiffs "obtained excellent results," *Hensley*, 461 U.S. at 435, as they prevailed on the merits of each claim they brought before the Court and were awarded tuition reimbursement for fourteen of the seventeen months for which they sought reimbursement. Under the reasoning of *Hensley*, therefore, a reduction in fees is not warranted in this case.

B. Reasonable Attorneys' Fees

    1. Legal Standard

Under the IDEA, the award of attorneys' fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).[10] The statute provides for a reduction in fees if the amount of fees "unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," or if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. §§ 1415(i)(3)(F)(ii), (iii). The fee applicant bears the burden of producing satisfactory evidence, in addition to the attorneys' own affidavits, to demonstrate that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *M.L. ex rel. M.P. v. Bd. of Educ. of City of New York*, No. 02-CV-4288, 2003 WL 1057476, at *2 (S.D.N.Y. Mar. 10, 2003) (internal quotation marks omitted).

Furthermore, in calculating an award of statutory attorneys' fees, courts in the Second Circuit are instructed to follow the method laid out by the Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). Since *Arbor Hill*, courts in the Second Circuit no longer use the "lodestar" method for computing attorneys' fees. *See Arbor Hill*, 522 F.3d at 190 ("The meaning of the term 'lodestar'

_____

[10] The Second Circuit has noted that "the community to which the IDEA's fee calculation provision refers is typically measured by the geographic area in which the action was commenced and litigated," namely the district in which the court sits. *A.R.*, 407 F.3d at 79 (internal quotation marks omitted). Therefore, the relevant community for this fee application is the Southern District of New York.

has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.

This opinion abandons its use." (footnote omitted)).  Instead, a district court in the Second

Circuit must:

> bear in mind *all* of the case-specific variables that [the Second Circuit] and other
> courts have identified as relevant to the reasonableness of the attorney's fees in
> setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying
> client would be willing to pay.  In determining what rate a paying client would be
> willing to pay, the district court should consider, among others, the *Johnson*
> factors; it should also bear in mind that a reasonable, paying client wishes to
> spend the minimum necessary to litigate the case effectively.  The district court
> should also consider that such an individual might be able to negotiate with his or
> her attorneys, using their desire to obtain the reputational benefits that might
> accrue from being associated with the case.  The district court should then use
> that reasonable hourly rate to calculate what can properly be termed the
> "presumptively reasonable fee."

*Id.* (emphasis in original); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir.

2009) (explaining the "presumptively reasonable fee" standard).[11]  The *Johnson* factors referred

---

[11] After *Arbor Hill* was decided, the Supreme Court, in *Perdue v. Kenny A. ex rel. Winn*, rejected
the use of the *Johnson* factors as a method for calculating attorneys' fees, stating that the method
"gave very little actual guidance to district courts."  130 S.Ct. 1662, 1672 (2010) (internal
quotation marks omitted).  The Supreme Court also explained that the lodestar method is
preferable because it "looks to the prevailing market rates in the relevant community," and
because it is "objective" and "thus cabins the discretion of trial judges, permits meaningful
judicial review, and produces reasonably predictable results."  *Id.* (internal quotation marks and
citations omitted).  The Supreme Court also noted that "the lodestar figure includes most, if not
all, of the relevant factors constituting a 'reasonable' attorney's fee."  *Id.* at 1673.

    However, *Arbor Hill* merely instructs district courts to take the *Johnson* factors into
account when determining the reasonable hourly rate, and then to use that reasonable hourly rate
to calculate the presumptively reasonable fee.  522 F.3d at 190.  This approach, though it uses
different terminology, is not at odds with the Supreme Court's reasoning in *Perdue* because like
the lodestar, it takes into account all the "relevant factors" in setting a reasonable rate, and then
uses that rate to determine the reasonable fee award.  Nor has *Arbor Hill* been overruled.  In
*Millea v. Metro-North Railroad Co.*, 658 F.3d 154 (2d Cir. 2011), the Second Circuit cited to
both *Arbor Hill* and *Perdue* in instructing that "the lodestar — the product of a reasonable hourly
rate and the reasonable number of hours required by the case — creates a 'presumptively
reasonable fee,'" and that failure to "calculate it as a starting point is legal error."  *Id.* at 166
(quoting *Arbor Hill*, 522 F.3d at 183); *see also Konits v. Karahalis*, 409 F. App'x 418, 422-23
(2d Cir. 2011) (continuing to apply *Johnson* factors in reviewing district court's determination of

to in *Arbor Hill* are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  The principles outlined by the Second Circuit in *Arbor Hill* apply to attorneys' fees applications under the IDEA.  *See K.F. v. N.Y.C. Dep't of Educ.*, No. 10-CV-5465, 2011 WL 3586142, at *2 (S.D.N.Y. Aug. 10, 2011).  However, "[i]t is not necessary for district courts to 'recite and make separate findings as to all twelve *Johnson* factors,'" as long as the court takes each into account in setting the attorneys' fee award.  *Green v. City of New York*, No. 05-CV-429, 2010 WL 148128, at *10 (E.D.N.Y. Jan. 14, 2010) (*quoting Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009)), *aff'd.*, 403 F. App'x 626 (2d Cir. 2010).

Therefore, *Arbor Hill* dictates that district courts engage in a multi-step process to determine the "presumptively reasonable fee."  The Court must determine a reasonable hourly rate, "bear[ing] in mind *all* of the case-specific variables" and after determining that rate, the Court then multiplies that rate by the hours reasonably expended to calculate the "presumptively reasonable fee."  *Arbor Hill*, 522 F.3d at 190; *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case —

---

reasonable hourly rate).  Therefore, regardless of the terminology used, the Court has abided by the Second Circuit's instruction for calculating the presumptively reasonable fee.

creates a 'presumptively reasonable fee.'" (quoting *Arbor Hill*, 522 F.3d at 183 and citing

*Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1673 (2010))).  And, as previously discussed,

courts may make adjustments to the presumptively reasonable fee based on equitable factors

such as the degree of success obtained by the prevailing party.  *See Adorno v. Port Auth. of N.Y.*

*& N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) ("Although the court in *Arbor Hill* did not

explicitly explain what should happen once the 'presumptively reasonable fee' was set, courts

have been adjusting the 'presumptively reasonable fee' for traditional factors such as the degree

of the plaintiff's success." (collecting cases)); *see also Humane Soc'y of U.S. v. HVFG, LLC*, No.

06-CV-6829, 2010 WL 3322512, at *5 (S.D.N.Y. Aug. 19, 2010) (noting that determining a fee

award "essentially boils down to a four-step process: (1) determine the reasonable hourly rate;

(2) determine the number of hours reasonably expended; (3) multiply the two to calculate the

presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee

award.").[12]

### 2. Reasonable Hourly Rate

As the Second Circuit instructed in *Arbor Hill*, "[t]he focus of the district courts is no

longer on calculating a reasonable *fee*, but rather on setting a reasonable hourly rate, taking

account of all case-specific variables."  522 F.3d at 189 (emphasis in original).  The Court thus

starts with the IDEA's mandate that the rate awarded shall reflect the prevailing rate in the

---

[12] Although courts may downwardly adjust the presumptively reasonable fee based on a
prevailing party's limited success, *see, e.g., Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d
132, 152-53 (2d Cir. 2008) (affirming district court's 50% fee reduction to account for limited
success), the Supreme Court has signaled that upward adjustments may be made only in "rare
and exceptional" circumstances, and that such adjustments "require specific evidence that the
lodestar fee would not have been adequate to attract competent counsel," *Perdue*, 130 S. Ct. at
1674 (internal quotation marks omitted).

community, and also takes into account the *Johnson* factors in determining the reasonable hourly rate.  *See E.S.*, 796 F. Supp. 2d at 428 ("*Arbor Hill* directed judges to use their discretion and consider case-specific variables to determine the reasonableness of the attorney's hourly rate.").  Defendant argues that Ms. Whateley and Mr. Sussman have not met their burden of demonstrating that their requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill (Def.'s Mem. 6-9), and that the *Johnson* factors do not favor awarding Mr. Sussman the $450 per hour that he requests or Ms. Whateley the $300 per hour that she requests, (*id.* at 4-6).  Defendant argues that Mr. Sussman should be compensated at a rate of less than $350 per hour and Ms. Whateley should receive $175 per hour.  (*Id.* at 9.)

### a. Prevailing Market Rate

As noted, in determining the "prevailing market rate," district courts are to undertake "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include taking judicial notice of the rates awarded in other cases, the court's own familiarity with the prevailing rates in the district, and consideration of the evidence submitted by the parties.  *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005).  Although a court may look to the fees awarded in other similar cases as a "starting point for determination of a reasonable award," the court cannot rely *only* on awards in prior cases in setting the rate.  *Id.* at 208 (citation omitted) (holding that the district court erred by not considering the evidence submitted by the parties and only looking at prior fee awards in determining the reasonable hourly rate).

"To determine the currently prevailing reasonable rate, courts look first to the lawyer's level of experience."  *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475

(S.D.N.Y. 2009).  Mr. Sussman is a well known civil rights attorney with over thirty years of experience successfully litigating a wide range of civil rights cases, and Ms. Whateley also has handled civil rights cases for most of her career, which has spanned over fifteen years.  Both have extensive experience in special education law.  (Whateley Aff. ¶¶ 19-23; Whateley Reply Aff. ¶¶ 2-4; Sussman Reply Aff. ¶ 1-3.)  Mr. Sussman has not submitted any affidavits (created for the purposes of this case) from local attorneys attesting to the reasonableness of his proposed fee, and Ms. Whateley has submitted one affidavit from William T. Flynn, the Managing Attorney of the Newburgh office of LSHV, attesting that her proposed fee is of $300 per hour is reasonable and appropriate based on her experience.  (Aff. of William T. Flynn ¶ 1.)[13]

Several courts in the Southern District of New York have recently found that the most experienced attorneys are entitled to between $350 and $375 per hour for single plaintiff IDEA cases, with one decision in the current year awarding $415 per hour.  *See T.K. ex rel. L.K. v. N.Y.C. Dep't of Educ.*, No. 11-CV-3694, 2012 WL 1107660, at *5 (S.D.N.Y. Mar. 30, 2012) (awarding experienced attorney who achieved some level of success in an IDEA administrative proceeding $415 per hour); *K.F.*, 2011 WL 3586142, at *5-6 (awarding $375 per hour to attorneys who had been admitted to the bar in 1996 and 1989, who represented single child in IDEA administrative proceedings); *J.S. ex rel. Z.S. v. Carmel Cent. Sch. Dist.*, No. 10-CV-8021,

---

[13] Mr. Sussman and Ms. Whateley submitted affidavits from another recent IDEA case, *M.P. v. N.Y.C. Dep't of Ed.*, No. 10-CV-6047, consolidated with *K.F. v. N.Y.C. Dep't of Ed.*, 10-CV-5465, which was before Judge Crotty in the Southern District of New York.  (Whateley Aff. Ex. 2.)  However, these affidavits were not created for the purpose of demonstrating that the fees sought by Ms. Whateley and Mr. Sussman are reasonable in *this* case.  They were created for an entirely different litigation.  Furthermore, after reviewing these affidavits, Judge Crotty did not grant the $450 per hour requested by the two lead attorneys, and found that "the market rate prevailing in this District for similar services by lawyers of reasonably comparable skill, experience and reputation [is] $375 per hour."  *K.F.*, 2011 WL 3586142, at *6.

2011 WL 3251801, at *5-6 (S.D.N.Y. July 26, 2011) (awarding lead attorney, who graduated

from law school in 1979 and opened solo practice specializing in education law in 2000, $375

per hour for representing single student in IDEA administrative proceedings, and awarding first

and second year associates $150 and $175 per hour); *E.S.*, 796 F. Supp. 2d at 430 (awarding

attorney with over fourteen years of experience in special education cases $350 per hour, and

associate with three years of experience in special education cases $175 per hour); *B.W.*, 716 F.

Supp. 2d at 342 (awarding $375 per hour to lead attorney in IDEA case, which was in line with

non-profit's fee policy for a "senior partner" level attorney (an attorney who has been practicing

for more than fifteen years)); *cf. LV v. N.Y.C. Dep't of Educ.*, 700 F. Supp. 2d 510, 518-19

(S.D.N.Y. 2010) (awarding lead attorneys with sixteen and thirty-three years of experience,

respectively, $600 per hour for complicated IDEA class action).  In these recent IDEA cases, the

courts have emphasized that the proceedings at issue were not overly complicated, and that

"[a]lthough courts in this jurisdiction have awarded hourly rates exceeding $400 to attorneys in

civil rights cases, such awards are only warranted in unusually difficult and complex cases."

*E.S.*, 796 F. Supp. 2d at 430 (internal quotation marks omitted); *see also J.S.*, 2011 WL 3251801,

at *5 (same).

     However, the Court notes that the rates awarded in the IDEA cases previously cited are

low compared to the rates awarded to attorneys in other civil rights cases, and that the rates

awarded in these cases within the last two years are the same "prevailing rates" that courts in this

district awarded to attorneys in IDEA cases up to fourteen years ago.  First, in the general civil

rights context, courts in this district have noted that consistent "precedent in the Southern

District reveals that rates awarded to experienced civil rights attorneys over the past ten years

have ranged from $250 to $600, and that rates for associates have ranged from $250 to $350,

with average awards increasing over time." *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724,

2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (quoting *Vilkhu v. City of New York*, No. 06-

CV-2095, 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (applying Southern District rates

and collecting cases), *vacated and remanded on other grounds*, 372 F. App'x 222 (2d Cir.

2010)); *see also Robinson v. City of New York*, No. 05-CV-9545, 2009 WL 3109846, at *4

(S.D.N.Y. Sept. 29, 2009) (same); *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01-CV-2762, 2007

WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ( "[W]ithin the last five years, courts have

approved rates ranging from $250 to $425 per hour for work done by partners in small firms in

this district."). In *Kahlil v. Original Old Homestead Restaurant, Inc.*, decided in 2009, the court

awarded an attorney with roughly twenty five years of experience "the unexceptional rate of

$400 per hour" in an Fair Labor Standards Act ("FLSA") case where "the issues in [the] case

were not particularly complex or unusual." 657 F. Supp. 2d at 476. This is on the low end of

rates awarded to senior attorneys in civil rights cases over the past several years. *See Allende v.

Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (awarding partner, who

graduated from law school in 2001, $450/hour and senior associate, who also graduated from

law school in 2001, $300/hour in FLSA case); *Adorno*, 685 F. Supp. 2d at 513-14 (awarding

$550/hour to plaintiff's lead counsel with over thirty years of experience; $500/hour to co-

counsel less experienced in employment law, and $250/hour to mid-level associate with six

years of experience in "complex and difficult" employment discrimination case); *Simmonds v.

N.Y.C. Dep't of Corr.*, No. 06-CV-5298, 2008 WL 4303474, at *4-5 (S.D.N.Y. Sept. 16, 2008)

(awarding $425/hour to ACLU lead counsel and $425/hour to senior law firm partner in Title

VII case that "did not present any unusually complicated factual or legal issues"); *Rozell v.

Ross-Holst*, 576 F. Supp. 2d 527, 544-46 (S.D.N.Y. 2008) (awarding $600/hour to two lead

18

attorneys who had extensive (over thirty years) experience, and $350/hour to senior associates with roughly seven years of experience in a "relatively straightforward . . . single plaintiff sexual harassment and retaliation case").  There is no logical reason to question and "the law does not support the contention that attorneys handling IDEA cases should be compensated at a lower rate than that which they normally command in other cases."  *Mr. X v. N.Y. State Educ. Dep't*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998); *see also S.W. ex rel. N.W. v. Bd. of Educ. of City of New York*, 257 F. Supp. 2d 600, 604 n.4 (S.D.N.Y. 2003) (same).

Second, courts in this district found, as long as fourteen years ago, that $350 to $375 per hour were reasonable rates for experienced litigators in IDEA cases, and "[i]t cannot be questioned that the market rates for legal services in New York has increased in that period." *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118, at *3 n.2 (S.D.N.Y. May 8, 2007) (discussing attorney's fees in the Southern District of New York from 1999 to 2007).  For example, in a 1998 IDEA case involving a single plaintiff and decided at the summary judgment stage, the district court awarded $350 to $375 per hour to the plaintiff's experienced attorney, even though he had no background in IDEA cases.  *See Mr. X*, 20 F. Supp. 2d at 564.  Other IDEA cases decided in this district decided before 2005 awarded similar attorneys' fees.  *See, e.g., A.R.*, 407 F.3d at 82 (holding that district court did not abuse its discretion in determining that a range of $300 to $350/hour was reasonable for representation at IDEA administrative hearings in 2000 and 2001); *M.L.*, 2003 WL 1057476, at *2 (observing in an IDEA case that "[s]everal courts in the Southern District of New York have found that attorney's fees ranging from $350 to $375 per hour for lead attorneys with substantial litigation experience are reasonable"); *R.E. v. N.Y.C. Bd. of Educ., Dist. 2*, No. 02-CV-1067, 2003 WL 42017, at *2 (S.D.N.Y. Jan. 6, 2003) (holding that rates of $350 and $365/hour were reasonable

19

for experienced litigator representing plaintiff at IDEA administrative proceedings); *S.W.*, 257 F. Supp. 2d at 604-05 (awarding $350/hour in 2003 IDEA case based on attorney's "experience and the rates charged by other attorneys with comparable credentials in the field"); *M.S. v. N.Y.C. Bd. of Educ.*, Nos. 01-CV-4015, 01-CV-10871, 01-CV-10872, 2002 WL 31556385, at *4-5 (S.D.N.Y. Nov. 18, 2002) (awarding experienced litigators working for a non-profit organization $350/hour for representation at IDEA administrative proceedings).[14]  Given that between 1998 and 2003, several courts in this district determined that $350 to $375 per hour was the prevailing market rate for experienced litigators in IDEA cases, the Court does not agree with Defendant that the prevailing market rate is or should be exactly the same in 2012.  *See Farbotko*, 433 F.3d at 209 ("Recycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under [a fee shifting statute] and compensation available in the marketplace . . . [which] undermines [the statute's] central purpose of attracting competent counsel to public interest litigation."); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (noting that fees "should be based on prevailing market rates, and current rates, rather than historical rates" (internal quotation marks and citation omitted)).  There is no doubt that attorney's rates in this district have increased during the past nine to fourteen years, and other non-IDEA civil rights cases reflect such an increase in the prevailing market rate.[15]  Therefore, the Court concludes that $450 per hour is a reasonable

---

[14] Additionally, in 2000, Mr. Sussman was awarded $300 per hour in a § 1983 action in which he acted in a supervisory capacity over one of his firm's associates.  *See Knoeffler v. Town of Mamakating*, 126 F. Supp. 2d 305, 311-12 (S.D.N.Y. 2000).  This award is in line with the prevailing market rates at that time.

[15] For example, the "2012 Real Rate Report," created by Ty Metrix and the Corporate Executive Board, shows that just between 2009 and 2011, average attorney billing rates in New York City rose from $565 per hour to $633 per hour, an increase of twelve percent.  *See Mike Mintz, New*

market rate for an attorney with over thirty years of civil rights litigation experience, and that

$300 per hour is reasonable for an attorney with over fifteen years of civil rights litigation

experience.[16]

---

*Report Finds Law Firm Hourly Billing Rates Continuing to Rise*, Martindale.com Blog (May 9, 2012), *available at* http://blog.martindale.com/new-report-finds-law-firm-hourly-billing-rates-continuing-to-rise.  The Real Rate Report was created based on legal fees charged by 4,000 law firms in 84 metropolitan areas around the United States.  The same report also demonstrates that rates around the nation increased steadily between 2007 and 2011.  Average attorney billing rates increased 8.2% between 2007-2008, 2.3% between 2008-2009, 4.3% between 2009-2010, and 5.1% between 2010-2011.  *See* Press Release, TyMetrix, Legal Billing Rates Continue to Rise Through Recession and Recovery According to CEB and TyMetrix Legal Analytics' 2012 Real Rate Report (Apr. 16, 2012), *available at* http://www.tymetrix.com/press-releases/136/showArticle.  Additionally, another recent study shows that between 2011 and 2012, average associate rates in New York City rose by eight percent, and average partner rates rose by three percent.  *See* Christine Simmons, *Study Shows Firms Boost Associate Billing Rates*, New York Law Journal, July 16, 2012.

[16] Defendant argues that Ms. Whateley should be compensated as a junior associate because Defendant claims that her experience with special education cases began in 2006.  (Aff. of Mark C. Rushfield in Opp'n to Pls.' Mot. for Statutory Att'y Fees and Costs ("Rushfield Aff.") ¶ 11-12.)  However, Ms. Whateley has submitted evidence to the contrary.  She has affirmed that she worked on special education cases between 1996 and 2001, when she was an associate for the Law Offices of Michael H. Sussman (Whateley Reply Aff. ¶ 4), and that since 2005, she has been assigned 528 cases dealing with disabled children, (*id.* ¶¶ 2-3).  She also has provided training in special education law to parents and lay advocates, as well as several training sessions on special education law to fellow attorneys.  (Whateley Aff. ¶¶ 21-23.)  She has thus shown that she has considerable experience in education law.

However, even if she had not made that showing, courts in the Second Circuit have held that a fee award should be based on an attorney's overall level of experience, not necessarily on the attorney's experience in a particular field.  *See A.R.*, 407 F.3d at 82 (holding that district court did not abuse discretion in awarding fees at top end of the reasonable range based on attorneys' experience, because "[e]ven though much of the lawyers' careers was spent practicing in areas other than education law, their overall legal experience merited a higher hourly rate because most important legal skills are transferrable" (internal quotation marks omitted)); *see also S.W.*, 257 F. Supp. 2d at 604 n.4 (rejecting as "immaterial" defendants' argument that attorney's fee should be reduced to reflect his limited experience in education law, where he was an experienced litigator); *M.L.*, 2003 WL 1057476, at *3 ("Courts in the Southern District of New York have maintained that experience in general litigation, rather than experience in specific matters, is the determinative factor in assessing the reasonableness of attorney's fees."); *Mr. X*, 20 F. Supp. 2d at 564 (approving requested fee despite attorney's lack of experience in special education law because attorney's extensive experience in other areas of practice

### b. *Johnson* Factors

The Court must also take into account the *Johnson* factors, as well as other case-specific

variables, in setting the reasonable hourly rate for Mr. Sussman and for Ms. Whateley.  *See*

*Arbor Hill*, 522 F.3d at 190.[17]  Neither Mr. Sussman nor Ms. Whateley argues that this case

---

"undoubtedly helped him learn about the IDEA quickly and effectively").  *But see E.S.*, 796 F.
Supp. 2d at 430 (reducing associate's fee award because she had no prior experience in
education law).

      The Court thus considers Ms. Whateley as having over fifteen years of litigation
experience, and courts in the Southern District have consistently awarded over $300 per hour to
attorneys considerably less experienced than Ms. Whateley.  *See Rosado v. City of New York*,
No. 11-CV-4285, 2012 WL 955510, at *5 (S.D.N.Y. Mar. 15, 2012) (awarding $350/hour in
§ 1983 excessive force case to attorney with 12 years of experience, and noting that in several
recent cases, the court has found rates of $350 to $375/hour reasonable for attorneys with nine to
eleven years of experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507
(S.D.N.Y. 2012) (awarding $350 per hour in FLSA case to two partners who had graduated from
law school in 2001 and 2003); *Lanzetta v. Florio's Enters., Inc.*, No. 08-CV-6181, 2011 WL
3209521, at *7 (S.D.N.Y. July 27, 2011) (awarding $300-$350/hour to lead counsel, a 2005 law
school graduate, in FLSA case); *Creighton v. Dominican Coll.*, No. 09-CV-3983, 2011 WL
4914724, at *6 (S.D.N.Y. Aug. 16, 2011) (awarding senior associate $395/hour in employment
discrimination case); *McDow v. Rosado*, 657 F. Supp. 2d 463, 468 (S.D.N.Y. 2009) (awarding
"well-seasoned litigator[]" with ten years of experience $350/hour in § 1983 excessive force
case, and finding that "[c]ourts in this District have held that $350 an hour was not an
unreasonable rate for a lawyer with 10 years of experience"); *accord B.W.*, 716 F. Supp. 2d at
342 (citing non-profit's billing policy, which provided for a rate of $375 per hour for attorneys
who had been practicing for more than fifteen years).

[17] Some district courts in the Second Circuit have noted that certain of the *Johnson* factors —
such as the time and labor required, and the time limitations imposed by the client or the
circumstances — more logically relate to the number of hours for which an attorney should be
compensated, than to the setting of the reasonable hourly rate.  *See, e.g.*, *Kahlil*, 657 F. Supp. 2d
at 476 n.2 ("[C]ertain *Johnson* factors such as the time and labor required or the time limitations
imposed bear little relevance to determining a reasonable rate and are more appropriately
considered in assessing counsel's reasonable hours."); *McDow v. Rosado*, 657 F. Supp. 2d 463,
467 (S.D.N.Y. 2009) (noting that "some of [the *Johnson*] variables . . . are more logically related
to determining the number or hours that should be compensated" (quoting *Rozell*, 576 F. Supp.
2d at 537 n.1)).  The Court agrees and finds that the preclusion of employment by the attorney
due to acceptance of the case at issue also falls into this category.  These factors more
appropriately inform the amount of time an attorney should have spent on a matter, and do not
necessarily relate to the rate an attorney may reasonably charge for those hours.  *See Robinson*,
2009 WL 3109846, at *4 n.6 (noting that certain *Johnson* factors — such as the time and labor

22

Case 7:09-cv-00859-KMK   Document 41   Filed 09/18/12   Page 23 of 40

presented any novel or difficult legal issues.  However, IDEA cases generally involve

voluminous records and are fact-intensive.  Here, Ms. Whateley represented Plaintiffs in their

appeal from the IHO's decision to the SRO, the record of which consisted of 1767 pages and

over 100 exhibits.  (Whateley Aff. ¶¶ 3-5.)  After the SRO upheld the IHO's findings, Mr.

Sussman agreed to co-counsel the case with Ms. Whateley in federal court, and they filed the

summons and complaint, as well as the motion for summary judgment which the Court granted

in their favor.  (*Id.* ¶¶10-14.)[18]  Even if the issues presented in the appeal to the SRO and in the

subsequent federal lawsuit were not novel, the case involved substantial factual issues relating to

the two IEPs and to the credibility of several experts who provided declarations as to N.B.'s

educational needs.  Plaintiffs benefitted from representation by two seasoned attorneys familiar

with the IDEA and who had the requisite legal skills to perform the legal services properly and

effectively against a seasoned and equally effective attorney representing Defendant.  Indeed,

---

required and the time limitations imposed — more logically relate to the amount of time for
which an attorney should be compensated, not to the reasonable hourly rate).

     Relatedly, however, district courts also have reasoned that "'as long as each factor is
accounted for, it does not ultimately matter where in the analysis it is applied.'"  *Id.* (quoting
*Rozell,* 576 F. Supp. 2d at 537 n.1); *see also Humane Soc'y of U.S.*, 2010 WL 3322512, at *5
(explaining that courts are to consider the *Johnson* factors as part of the "reasonableness
analysis"); *Adorno*, 685 F. Supp. 2d at 512 (noting that whether considered in setting the
reasonable rate, or determining the reasonable number of hours "[t]he key is that the *Johnson*
factors are weighed at some point in the process"); *McDow*, 657 F. Supp. 2d at 467 (explaining
that "[t]he *Johnson* factors, among others, apply with varying force on a non-exclusive basis to
each of [the] steps," which include determining the reasonable hourly rate and determining the
number of hours reasonably expended).  Therefore, the Court will consider these factors when
evaluating the number of hours counsel should reasonably have expended on the case.

[18] Ms. Whateley's relationship with Plaintiffs began in July 2008, and Mr. Sussman's began in
December 2008.  (Whateley Aff. ¶¶ 3, 11.)  Judgment for Plaintiffs in the amount of $71,041,25
was entered on August 15, 2011 (Dkt. No. 28), and the relationship is ongoing, as Defendant has
appealed to the Second Circuit.  Therefore, the length and nature of the professional relationship
weigh in favor of Plaintiffs' fee request.  *See E.S.*, 796 F. Supp. 2d at 429 (finding that five year
professional relationship weighed in favor of plaintiffs' fee request).

23

Plaintiffs ultimately succeeded on the merits of all contested claims — the Court reversed the findings of the IHO and the SRO and awarded Plaintiffs tuition reimbursement for fourteen of the seventeen months for which they sought reimbursement.  Furthermore, as discussed above, Mr. Sussman is an experienced civil rights litigator with over thirty years of experience (Sussman Reply Aff. ¶¶ 1-3), who has litigated many special education cases, both administratively and in the federal courts, (*id.* ¶ 3).  Ms. Whateley has over fifteen years of experience in civil rights litigation, and since 2005 has worked on 528 cases involving disabled children.  (Whateley Reply Aff. ¶¶ 2-4.)  Both Mr. Sussman and Ms. Whateley have conducted CLE seminars and attorney training on special education law.  (Flynn Aff. ¶ 5; Whateley Aff. ¶¶ 21-23.)  The Court thus concludes that they are experienced and able attorneys in this area of the law.

Ms. Whateley worked for LSHV at the time she represented Plaintiffs, and thus did not charge a rate for her services.  Defendant argues that Ms. Whateley is not entitled to the $300 per hour that she seeks, in part because she "provides nothing to evidence that she ever charges anything for her services" at LSHV, and because Plaintiffs came to her organization because they were unable to continue to pay to retain private counsel.  (Def.'s Mem. 5.)  However, "[i]t is well-established that civil rights attorneys not working for profit are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients . . . ."  *Heng Chan*, 2007 WL 1373118, at *2 (citing *Blum v. Stenson*, 465 U.S. 886, 892-94 (1984)); *see also M.S.*, 2002 WL 31556385, at *5 ("It is well settled that attorneys at not-for-profit organizations representing plaintiffs on a no-fee basis are to be awarded fees at the same rate charged by comparable attorneys in the relevant community.").  In fact, in *Arbor Hill*, the Second Circuit emphasized that "[t]he reasonableness of a fee award does not depend on whether the attorney

works at a private law firm or a public interest organization."  522 F.3d at 184 n.2.  The fact that

an attorney is working pro bono is only relevant "insofar as the market rate for civil rights

litigation services is lower than the market rate for services provided to high-profile corporate

clients."  *Heng Chan*, 2007 WL 1373118, at *3.  Therefore, the fact that Ms. Whateley did not

charge for her services does not reduce the amount which she is entitled to recover under a fee

shifting statute such as the IDEA.

Mr. Sussman has not attested to his customary hourly rate, although he states that in light

of his experience, an hourly rate of $450/hour is reasonable (or, in his view, modest).  (Sussman

Reply Aff. ¶ 2.)  Furthermore, he has provided no details as to the fee arrangement he negotiated

with Plaintiffs, if any, and whether the fee was fixed or contingent.  However, given that

Plaintiffs were unable to continue to pay for private counsel when they retained the services of

Ms. Whateley (Whateley Aff. ¶ 3), it is unlikely that they were able to pay a fixed fee to Mr.

Sussman.  Nevertheless, given the other *Johnson* factors weighing in his favor, Mr. Sussman's

level of experience, and awards to other attorneys in civil rights cases, the Court finds that $450

per hour is a reasonable rate for Mr. Sussman.  Likewise, $300 per hour is a reasonable rate for

Ms. Whateley.

### 3. Reasonableness of Time Entries

Once the Court has determined the "reasonable hourly rate," it then multiplies that rate

by the number of hours required by the case to determine the "presumptively reasonable fee."

*Millea*, 658 F.3d at 166 (quoting *Arbor Hill*, 522 F.3d at 183).  Plaintiffs have the burden of

providing evidence to support the number of hours worked, and although counsel "'is not

required to record in great detail how each minute of his time was expended,' counsel should

'identify the general subject matter of his time expenditures.'"  *M.L.*, 2003 WL 1057476, at *4

25

(quoting *Hensley*, 416 U.S. at 437 n.12); *see also J.S.*, 2011 WL 3251801, at *6 (noting that the description of the work performed need not be "overly specific" and that "'[g]eneral descriptions of completed work are sufficient'").  The time records submitted must enable the Court to determine the "nature of the tasks performed and the amount of time reasonably required to perform those tasks." *M.L.*, 2003 WL 1057476, at *4.  The Court must then examine the time entries to determine whether the hours billed are reasonable, as "[p]laintiffs should receive compensation only for hours that were reasonably expended." *Kahlil*, 657 F. Supp. 2d at 476 (citing *Hensley*, 461 U.S. at 433); *see also* 20 U.S.C. § 1415(i)(3)(F)(iii) (providing for a reduction in attorneys' fees if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding"); *Quaratino*, 166 F.3d at 425 ("In determining the number of hours reasonably expended . . . the district court should exclude excessive, redundant or otherwise unnecessary hours . . . .").  In making this determination, "the Court must look not only to the 'contemporaneous time records that specify for each attorney, the date, hours expended, and nature of the work done,' but also 'to its own familiarity with the case . . . and its experience generally.'" *Robinson*, 2009 WL 3109846, at *5 (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983)).  However, in assessing the overall reasonableness of a fee award, the Supreme Court has emphasized that "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

Defendant argues that the fee award should be reduced because of vague, excessive, and redundant entries, billing for clerical tasks, block billing, entries that were not recorded

contemporaneously, and improper recording of time entries.  (Def.'s Mem. 9-14.)  The Court examines each of Defendant's objections in turn.

a. Unnecessary, Excessive, and Redundant Entries

Defendant argues that several of Ms. Whateley's and Mr. Sussman's time entries reflect work that was unnecessary, excessive, or redundant.  Although a district court has the discretion to make across-the board reductions to exclude unreasonable or excessive hours, where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experiences with the practice of law, to assess the reasonableness of the hours spent."  *E.S.*, 796 F. Supp. 2d at 431 (internal quotation marks omitted).  After reviewing the time spent by Ms. Whateley and Mr. Sussman on this matter, and given the Court's knowledge of the factual and procedural background of this case, the Court does not find that an overall reduction for excessive or unnecessary time entries is warranted.[19] The Court also notes the favorable result that Ms. Whateley and Mr. Sussman obtained for Plaintiffs, which is a relevant consideration in determining whether the hours expended on the matter were reasonable.  Where the Court has determined that specific entries are duplicative or unnecessary, however, the Court has reduced those hours accordingly.

_____

[19] Taking into account the remaining *Johnson* factors — the time and labor required, the preclusion of employment due to acceptance of the case, and the time limitations imposed by the client or the circumstances — the overall number of hours expended by counsel is reasonable. Ms. Whateley seeks compensation for 216.10 hours of work performed over 38 months, and Mr. Sussman seeks compensation for 36.5 hours of work over approximately 32 months.  The time and labor expended by counsel was not unreasonable taking into account the length of time the case lasted.  Neither Ms. Whateley nor Mr. Sussman has asserted that either was precluded from accepting employment as a result of accepting the case, and the hours for which they billed demonstrate that they both could have handled other matters while also working on this case. But Ms. Whateley was conservative in the number of hours she has submitted for compensation, as evidenced by many "zero" time entries in the time sheet she submitted.  (Whateley Aff. Ex. 1.)

Defendant first argues that Ms. Whateley should not have taken 7 hours on September 9 and September 15, 2008 to prepare digests of the IHO hearing transcripts after she had already spent 19 hours between August 11 and August 20, 2008 reviewing them.  (Rushfield Aff. ¶ 15.) However, Ms. Whateley did not represent Plaintiffs before the IHO, and given the length of the transcripts — 1767 pages  — the Court cannot say that the time she spent in her review was excessive or redundant.  Defendant also seeks to exclude 8.4 hours that Ms. Whateley spent on October 15, 2008, October 30, 2008, and November 3, 2008 allegedly researching and preparing a memorandum of law which the SRO refused to consider because it was untimely submitted.  (Rushfield Aff. ¶ 17.)  Defendant relies on *J.S. v. Carmel Central School District* for the proposition that the Court should exclude time spent drafting the memorandum which was rejected by the SRO.  *See* 2011 WL 3251801, at *7 ("In light of the SRO's [denial of the motion as improperly brought], the Court will not grant any fees incurred in drafting it.").  With the exception of one entry on October 30, 2008 (.5 hours spent reviewing the District's objections) and the entry on November 3, 2008 (1.5 hours spent drafting responses to the District's objections to the memorandum), the time entries that Defendant challenges do not seem to relate specifically to this memorandum of law, and relate more generally to the appeal to the SRO.[20] Ms. Whateley already has included "zero" time entries for the time she spent drafting the memorandum of law on October 10, 16, 17, and 20, 2008.  (Whateley Aff. Ex. 1, at 1-2.) However, in light of the SRO's rejection of the memorandum of law, the Court will disallow the .5 hours she spent reviewing the District's objections on October 30, 2008 and the 1.5 hours she

---

[20] The other contested time entries include: 4.5 hours spent on October 15, 2008 conducting legal research on numerous issues concerning the SRO appeal, 1.1 hours spent on October 30, 2008 researching the NYCRR rules of practice, and .8 hours spent on October 30, 2008 researching legislative and DOE updates.  (Whateley Aff. Ex. 1, at 1-2.)

spent on November 3, 2008 responding to the District's objections to the memorandum of law. (*Id.* at 2.)  Accordingly, the Court will disallow only these 2 hours.

Defendant further posits that the time Ms. Whateley and Mr. Sussman spent arranging their co-counsel relationship is not properly reimbursable, as is Mr. Sussman's time spent reviewing the action before he was retained as co-counsel.  (Rushfield Aff. ¶¶ 20-22.) Defendant offers no case law in support of these propositions.  Furthermore, Ms. Whateley states in her affidavit that Mr. Sussman agreed to co-counsel the case on December 19, 2008. (Whateley Aff. ¶ 11.)  From Ms. Whateley and Mr. Sussman's time entries, it appears that a co-counsel agreement was finalized sometime around January 27, 2009.  (Whateley Aff. Ex. 1, at 2.)  The Court declines to exclude the time spent by Mr. Sussman on the action before that date, since he had agreed to co-counsel the case on December 19, 2008.  Furthermore, many of the entries which Defendant contests relate to the drafting of the complaint and to meetings between Ms. Whateley, Mr. Sussman, and Plaintiffs to discuss the federal litigation.  For example, Defendant contests 5 hours that Ms. Whateley spent in meetings with Mr. Sussman and Plaintiffs to discuss the federal litigation on January 12 and January 16, 2009.  (Rushfield Aff. ¶ 20.) Defendant also contests Mr. Sussman's time entries for these two January meetings, as well as 2.25 hours he spent on January 8 and January 26, 2009 working on the Complaint.  (*Id.* ¶ 21.) The Court finds that this time is properly reimbursable, as courts have held that attorneys may be reimbursed for the time they spend working on an action prior to the filing of the complaint.  *See Kahlil*, 657 F. Supp. 2d at 477 ("Courts in this circuit typically award attorneys' fees for pre-filing preparations."); *Cruz v. Henry Modell & Co.*, No. 05-CV-1450, 2008 WL 905351, at *6 (E.D.N.Y. Mar. 31, 2008) (awarding attorneys' fees for time spent drafting the complaint).

Defendant also challenges 2.2 hours spent by Ms. Whateley drafting and revising the co-

counsel agreement (Rushfield Aff. ¶ 20), and .25 hours spent by Mr. Sussman reviewing and editing the co-counsel agreement, (*id.* ¶ 21).  The time spent by Ms. Whateley and Mr. Sussman arranging the co-counsel agreement is also compensable, as Defendant has not disputed that it was reasonable for Ms. Whateley to retain Mr. Sussman as co-counsel.  *See Simmonds*, 2008 WL 4303474, at *9 (holding that time reasonably spent looking for co-counsel was compensable); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").  Here, the time counsel spent on this work was minimal (2.45 hours total) in light of the total time spent on the litigation.

Defendant challenges the time spent by Ms. Whateley (4.8 hours) and Mr. Sussman (1.25 hours) drafting and discussing a potential order to show cause for injunctive relief regarding pendency, which was never filed.  (Rushfield Aff. ¶¶ 23-25.)  These hours were billed on February 2, 2009, March 2, 2009, and March 10-12, 2009.  (Whateley Aff. Ex. 1, at 2; Sussman Aff. Att. A.)  Because Plaintiffs never filed the order to show cause, the time spent on this claim was unnecessary, and accordingly should be excluded.  *See Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, No. 09-CV-975, 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010) (disallowing hours spent on a motion that lacked a factual or legal basis), *adopted by* 2010 WL 5373900 (S.D.N.Y. Dec. 22, 2010); *Rozell*, 576 F. Supp. 2d at 538 (noting that "counsel may be denied compensation for work done on motions that were never filed"); *see also Quaratino*, 166 F.3d at 425 ("In determining the number of hours reasonably expended . . . the district court should exclude excessive, redundant or otherwise unnecessary hours . . . .").

Lastly, Ms. Whateley admits that the 3 hours she spent discussing the case with "RLS"

on September 24, 2008 may not be reimbursable (Rushfield Aff. ¶ 16; Whateley Reply Aff. ¶ 5),

and the Court therefore excludes these hours from her fee award.

b.  Clerical Tasks

Ms. Whateley billed four hours of travel time she spent serving Plaintiffs' petition for

review of the IHO's decision to the SRO upon Defendant.  (Whateley Aff. Ex. 1, at 1.)

Defendant argues that this was a clerical task not requiring the services of an attorney, and

accordingly she should not be compensated for this time.  (Rushfield Aff. ¶ 14.)  Defendant also

disputes as clerical 2.5 hours that Ms. Whateley spent on December 10, 2008 reorganizing the

file and preparing exhibits for the litigation.  (*Id.* ¶ 18; Whateley Aff. Ex. 1, at 2.)  A court has

the discretion to reduce the award for time spent by attorneys engaging in "less skilled work, like

filing and other administrative tasks."  *E.S.*, 796 F. Supp. 2d at 431; *see also Tucker v. City of

New York*, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (reducing fee award where attorney billed

at full rate for clerical tasks such as serving process, copying, bates stamping, and filing papers);

*Guardado v. Precision Fin., Inc.*, No. 04-CV-3309, 2008 WL 822105, at *6 (E.D.N.Y. Mar. 25,

2008) (noting that courts usually disallow hours spent on clerical tasks that are included in

overhead and not normally billed to clients).  Ms. Whateley explains that she became personally

involved in serving process on Defendant because Plaintiffs were unable to locate any employee

at the school district willing and authorized to accept process.  (Whateley Reply Aff. ¶ 5.)  Ms.

Whateley drove to Tuxedo, and then found out that all the school administrators and board

members were attending a retreat in Harriman, New York, and she then accompanied Plaintiffs

to Harriman to effect service.  (*Id.*; Whateley Aff. ¶ 7.)  She states that her involvement was

necessary because she believed that the District was intentionally avoiding service of process.

(Whateley Reply Aff. ¶ 5.)  However, Ms. Whateley billed this time as travel time (Whateley

Aff. Ex. 1, at 1), and is seeking compensation at $150 per hour, half her hourly rate.  *See Mr. X*, 20 F. Supp. 2d at 564 (noting that courts in this circuit generally reimburse attorneys for travel time at 50% of their normal hourly rate).  The Court finds that compensation at this rate is reasonable given Ms. Whateley's explanation for her personal involvement in serving process.

However, the Court agrees with Defendant that Ms. Whateley should not be fully reimbursed for the time she spent reorganizing the file and preparing exhibits.  Courts generally hold that "clerical and secretarial services are part of overhead and are not generally charged to clients," though preparation of trial exhibits is more akin to work properly performed by paralegals, and is reimbursable as such.  *Guardado*, 2008 WL 822105, at *6 (internal quotation marks omitted); *see also Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 276 F.R.D. 105, 111 (S.D.N.Y. 2011) ("[T]he task of assembling exhibits is clerical in nature and should have been completed by administrative staff . . . ."); *Dotson v. City of Syracuse*, No. 04-CV-1388, 2011 WL 817499, at *26 (N.D.N.Y. Mar. 2, 2011) (determining that clerical tasks such as organizing files are not compensable, while paralegal tasks such as the preparation of trial exhibits are compensable); *Rozell*, 576 F. Supp. 2d at 539-40 (noting that under fee shifting statutes, counsel may not be compensated at their full rate for performing clerical tasks, and if the task is one that is normally part of overhead, should not be compensated at all).  Therefore, the Court finds that Ms. Whateley should not be compensated for the time she spent reorganizing the file, as this is a clerical non-reimbursable task.  However, she should be compensated at a reduced rate for the time she spent preparing exhibits, as this is a task that normally would have been performed by a paralegal.  Since she billed these two activities together as one block of 2.5 hours, the Court will apply a reduction of 75% for this time, in effect reimbursing her for half of the time at half her hourly rate.  *See McDonald v. Pension Plan of the NYSA-ILA Pension Trust*

32

*Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (noting that when confronted with unreasonable time

entries, "[a] district court may exercise its discretion and use a percentage deduction as a

practical means of trimming fat from a fee application" (internal quotation marks and citation

omitted)).

c. Vague Entries and Block Billing

Defendant attacks several of Ms. Whateley's time entries as vague and argues that this

time is therefore not reimbursable.  (Rushfield Aff. ¶ 26.)[21]  Courts "frequently reduce fee

requests when entries are too vague to properly document the number of hours claim[ed]."

*Starkey*, 2008 WL 5378123, at *5; *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172-73 (2d

Cir. 1998) (noting that district court has discretion to reduce entries that are "too vague to

sufficiently document the hours claimed" (internal quotation marks omitted)); *Robinson*, 2009

WL 3109846, at *6 ("A court can reduce entries that are too vague to sufficiently document the

hours claimed because entries lacking sufficient detail cannot be evaluated for reasonableness."

(citation and internal quotation marks omitted)).  A court must use its discretion in determining

whether entries are too vague, as counsel "is not required to record in great detail how each

minute of his time was expended . . . [but] should identify the general subject matter of his time

expenditures."  *Hensley*, 461 U.S. at 437 n. 12.  Ms. Whateley generally kept detailed time

records and there are only a few entries which Defendant attacks as vague, totaling 2.1 hours.

As one district court has noted, courts should be "cautious about questioning such entries," as

---

[21] The contested time entries include: .3 hours spent on March 18, 2009 sending miscellaneous emails to Plaintiffs; .8 hours spent on June 10, 2009 reviewing emails from L.B.; .5 hours spent on August 13, 2009 for drafting an email to Plaintiffs regarding the forum school in New Jersey; and .5 hours spent on December 23, 2010 on miscellaneous emails and phone calls.  (Whateley Aff. Ex. 1, at 3-4.)

33

"[m]any of the entries specifically highlighted by [D]efendant[] are very brief," and if lawyers were required to document every detail of even short client conferences, "more time would be spent documenting the work than doing it." *Starkey*, 2008 WL 5378123, at *5. Given that Ms. Whateley has on the whole documented her time entries with specificity, the Court declines to exclude these entries.

Defendant also contests Mr. Sussman's time entry for July 28-30, 2010, where he billed 4.25 hours as one block of time spent drafting and reviewing motion papers. (Rushfield Aff. ¶ 27.) Defendant argues that this is improper "block billing" and that the Court should disallow these hours. (Def.'s Mem. 12.) However, "block billing" involves combining several tasks into a single entry, not combining several days' worth of work on the same task in one entry. *See E.S.*, 796 F. Supp. 2d at 432 (noting that block billing, which involves combining several tasks into one entry, though not forbidden, makes it "difficult . . . for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided" (internal quotation marks omitted)); *see also Hnot v. Willis Grp. Holdings Ltd.*, No. 01-CV-6558, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008) (noting that most often, "courts have ordered [] reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate," and "absent evidence that plaintiffs' block-billing has obscured such unreasonable billing, the Court will not impose an across-the-board penalty"). Defendant has identified no entries where the hours billed are unreasonable, or where block billing has combined activities compensable at different rates. Therefore, the Court does not find any reduction warranted.

34

<u>d.  Contemporaneous Entries and Timekeeping Methodology</u>

Finally, Defendant argues that two time entries are not contemporaneously maintained (Rushfield Aff. ¶¶ 19, 27), and because Mr. Sussman only records time in quarter hours rather than in six minute increments, his overall fee award should be reduced, (*id.* ¶ 28).  Defendant claims that because the SRO decision was issued on December 15, 2008, there is no way Ms. Whateley could have spent two hours reviewing that decision on December 12, 2008, and therefore this entry was not maintained contemporaneously.  (*Id.* ¶ 19.)  Defendant also attacks the 4.25 hours billed by Mr. Sussman between July 28 and July 30, 2010 as not having been recorded contemporaneously.  (*Id.* ¶ 27.)  The Second Circuit has specified that "[a]ll applications for attorney's fees . . . should normally be disallowed unless accompanied by *contemporaneous* time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n of Retarded Children, Inc.*, 711 F.2d at 1154 (emphasis added).  In *Scott v. City of New York*, the Second Circuit again emphasized that "absent unusual circumstances," lawyers making fee applications "are required to submit contemporaneous records with their fee applications."  626 F.3d 130, 133 (2d Cir. 2010); *see also Fuerst v. Fuerst*, No. 10-CV-3941, 2012 WL 1145934, at *4 (E.D.N.Y. Apr. 5, 2012) ("A party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.").  Because the time recorded by Ms. Whateley for December 12, 2008 could not have been recorded contemporaneously, the Court disallows those two hours.  *See Fuerst*, 2012 WL 1145934, at *4 (declining to reimburse attorney for specific time for which records were not maintained contemporaneously).  However, the Court does not find it reasonable to reduce Mr. Sussman's award for the hours he billed between July 28 and 30, 2010.  Although the record he submitted to the Court combines the

35

work performed over these three days, there is no indication that he was not keeping track of the work as he performed it over those three days, or that he recorded this entry long after the work was done.

Likewise, the Court will not apply an overall reduction of Mr. Sussman's fee award for billing in fifteen minute increments rather than in six minute increments.  One district court recently noted that lower courts within the Second Circuit are in conflict as to whether there should be "a prohibition on billing in increments larger than six minutes," but nonetheless decided that a reduction in fees for such billing practices was not warranted.  *United States v. Sixty-One Thousand Nine Hundred Dollars and No Cents*, No. 10-CV-1866, 2012 WL 1202015, at *4 (E.D.N.Y. Apr. 5, 2012) (noting that lawyers from small firms often record their time in quarter hour increments and that billing in quarter hour increments is no more likely to result in over-billing than billing in six minute increments); *compare Trs. of Buffalo Laborers' Pension Fund v. Accent Stripe, Inc.*, No. 01-CV-76, 2007 WL 2743441, at *4 (W.D.N.Y. Sept. 18, 2007) (reducing number of hours by 10% to account for lack of good billing judgment where attorney only billed in fifteen minute increments), *with N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, No. 98-CV-1902, 2004 WL 437474, at *6 (N.D.N.Y. Feb. 27, 2004) (declining to reduce fee award for billing in quarter hour increments where defendant cited no authority calling into question the method's propriety, and under the circumstances of the case, a reduction was not warranted).

Defendant cites several cases where the district court exercised its discretion to reduce a fee award where excessive billing resulted from counsel recording time in fifteen minute increments.  *See, e.g.*, *Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05-CV-6757, 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (noting that recording time in quarter hour

36

increments "has repeatedly been found improper and justifies some further conservatism in calculating the amount of compensable time"); *Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497, 2008 WL 4525372, at *10 (S.D.N.Y. Oct. 2, 2008) (noting that billing in one quarter hour increments "compounded" the court's inability to assess the reasonableness of hours billed); *Destefano v. Astrue*, No. 05-CV-3534, 2008 WL 623197, at *3 n.5 (E.D.N.Y. Mar. 4, 2008) ("Although fifteen-minute increments are not unreasonable *per se*, [counsel's] time sheets are necessarily less precise than they could be, and may be reduced on that basis." (citation omitted)), *adopted by* 2008 WL 2039471 (E.D.N.Y. May 9, 2008).  However, the courts which have elected to apply an across-the-board reduction for billing in fifteen-minute increments have generally done so when the billing method contributed to counsel recording an inflated number of hours.  *See Spalluto*, 2008 WL 4525372, at *10 (emphasizing that billing in fifteen minute increments exacerbated court's difficulty in determining reasonableness of counsel's already vague entries); *Colegrove v. Barnhart*, 435 F. Supp. 2d 218, 221 (W.D.N.Y. 2006) (holding that a reduction was necessary when a number of entries were billed in quarter-hour time increments for tasks that seemingly would not take a full fifteen minutes); *Oxford Venture Fund Ltd. v. CIT Grp./Equip. Fin., Inc.*, No. 89-CV-1836, 1990 WL 176102, at *2 (S.D.N.Y. Nov. 5, 1990) (finding that attorneys excessively billed by using fifteen minute increments when for example, they billed "one-quarter hour for making one 'unsuccessful' telephone call — an activity that surely took only a fraction of that time").  A review of Mr. Sussman's time records does not reveal that he over-billed for his services because he billed in quarter hour increments, and Defendant makes no such argument.  Therefore, a reduction in fees solely because he billed in quarter hour increments is not warranted in this case.

4. Total Attorneys' Fee Award

The Court thus reimburses Ms. Whateley for 195.2 hours at $300 per hour and 10.75 hours at $150 per hour, totaling $60,172.50.[22]  The Court reimburses Mr. Sussman for 35.25 hours at $450 per hour, for a total of $15,862.50.

| Attorney | Hourly Rate | Hours Requested | Hours Disallowed | Hours Changed to Lower Rate | Total Hours Compensated | Total |
|---|---|---|---|---|---|---|
| **Mary Jo Whateley** | $300 | 209.5 | 14.3 | - | 195.2 | $58,560 |
| | $150 | 9.5 | - | 1.25 | 10.75 | $1,612.50 |
| **Michael H. Sussman** | $450 | 36.5 | 1.25 | - | 35.25 | $15,862.50 |
| | | | | | | **$76,035.00** |

C. Costs

Plaintiffs also seek reimbursement for $425 in costs, which include a $350 filing fee and $75 for service of process.  (Sussman Aff. ¶ 10.)  Defendant does not contest that Plaintiffs are entitled to reimbursement for these costs.  The Supreme Court has held that the term "costs" as used in 20 U.S.C. § 1415(i)(3)(B) refers to the list set out in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court.  *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006).  The costs which Plaintiff paid for filing and for service of process are recoverable under § 1920.  *See* 28 U.S.C. § 1920(1); *M.K.*, 578 F. Supp. 2d at 434 (holding that court filing and service of process fees are recoverable under § 1920(1)).  Therefore, the Court grants Plaintiffs' request for reimbursement of $425 in costs.

---

[22] The 2.5 hours for which the Court reduced Ms. Whateley's compensation by 75% are included here as 1.25 hours billed at a rate of $150.

### III. Conclusion

For the reasons stated herein, Plaintiffs are granted $76,035 in attorneys' fees and $425 in costs. The Clerk of Court is respectfully directed to enter judgment for Plaintiffs and terminate the pending motion, (Dkt. No. 30).


SO ORDERED.

Dated: White Plains, New York
   September 18, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

39

Service List:

Michael Howard Sussman, Esq.
Mary Jo Whateley, Esq.
Sussman & Watkins
Post Office Box 1005
55 East Main Street
Goshen, NY 10924
(845)294-3991
sussman1@frontiernet.net
*Counsel for Plaintiffs*

Mark Craig Rushfield, Esq.
Shaw, Perelson, May & Lambert, LLP
21 Van Wagner Road
Poughkeepsie, NY 12603
(845) 486-4200
mrushfield@shawperelson.com
*Counsel for Defendant*